# GEORGE REIDY *v.* STATE OF MARYLAND

[No. 87, September Term, 1969.]

*Decided November 24, 1969.*

170

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Harleigh P. Yewell* for appellant.

*Donald Needle, Assistant Attorney General,* with
whom were *Francis B. Burch, Attorney General, Arthur
A. Marshall, Jr., State's Attorney for Prince George's
County,* and *James E. Kenkel, Assistant State's Attor-
ney for Prince George's County,* on the brief, for appel-
lee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was convicted by a jury in the Circuit Court
for Prince George's County of second degree murder and
sentenced by the court to eleven years under the juris-
diction of the Department of Correction. He contends on
this appeal that the prosecutor so exceeded the bounds
of permissible comment in his closing argument to the
jury as to deny him his constitutional right to a fair
trial.

Evidence was adduced at the trial showing that on the
night of June 24, 1968, the deceased Robert Goodman
and the appellant left a tavern and, after heated words
were spoken between them, an altercation erupted in a
nearby alley. According to appellant's testimony, Good-
man struck him a sudden blow in the neck and chin and
came after him in a menacing manner with something
"shiny" in his hand. The appellant testified that he fled
to his car where he obtained a gun; that he then observed
the deceased drive off in his automobile, and as it ap-
peared that he was going to drive it into him, he fired at

the deceased. The State's evidence, on the other hand, showed that appellant chased the deceased from the alley and fired a number of shots at him at close range. The physical evidence strongly indicated that the deceased was not the aggressor and that appellant shot Goodman as he sat in his automobile.

Appellant defended the case on the theory that the killing was committed in self-defense, and the trial judge instructed the jury at considerable length on the legal principles pertaining thereto. The prosecutor then argued the State's case to the jury, in the course of which he told the jury: "There is really no self-defense here. It is a fiction manufactured by the defense counsel." Defense counsel promptly objected, stating that the prosecutor's statement was "absolutely improper and out of order." He asked the court to instruct the prosecutor to apologize. The court, responding, said:

> "The jury is instructed that the opening remarks that counsel gave as well as concluding remarks are not evidence in the case, and that both the State and defense counsel have a perfect right to argue the case as they feel, and we feel it is no improper remark."

After the prosecutor had concluded his argument, defense counsel stated in argument to the jury that:

> "[W]hat he [the prosecutor] accused me of was an impropriety and improper action because he said the defense was something I concocted. That is professional misconduct."

Not content to let the matter rest, the prosecutor took issue with these remarks, stating:

> "That is not misconduct, and Your Honor so ruled, and that is misconduct when he says something that Your Honor ruled is proper."

The court said:

> "All right, gentlemen, it is not evidence. Let's cool down."

I

It is fundamental to a fair trial that the prosecutor should make no remarks calculated to unfairly prejudice the jury against the defendant. *Meno v. State,* 117 Md. 435; *Holbrook v. State,* 6 Md. App. 265. And it is unquestionably wrong for the prosecutor in his argument to the jury to refer to any matter not testified to by the witness or disclosed by the evidence in the case. *Toomer v. State,* 112 Md. 285. On the other hand, the fact that a remark made by the prosecutor in argument to the jury was improper does not necessarily compel that the conviction be set aside. *Conway v. State,* 7 Md. App. 400. The Maryland Rule is that unless it appears that the jury were actually misled or were likely to have been misled or influenced to the prejudice of the accused by the remarks of the State's Attorney, reversal of the conviction on this ground would not be justified. *Wood v. State,* 192 Md. 643; *Holbrook v. State, supra.*

The prosecutor's remark to the jury that appellant's claim of self-defense was "a fiction manufactured by the defense counsel" could have been interpreted by the jury to mean that defense counsel suborned perjury or that he fabricated the defense, or that the defendant himself committed perjury in testifying that he committed the homicide in self-defense. And by declining defense counsel's request that the prosecutor apologize, and in finding nothing "improper" in the prosecutor's remarks, the court's action may have been considered by the jury as tantamount to judicial approval of the propriety of such argument. And again, when defense counsel's statement to the jury that the prosecutor's remarks were improper, and constituted professional misconduct was objected to by the prosecutor, the trial judge did nothing to dispel the fact that the prosecutor's remarks had indeed been improper. It is against this background that we determine whether appellant's right to a fair trial was thereby so prejudiced as to constitute a denial of his right to a fair trial.

In most cases involving accusations by the prosecutor

before the jury that defense counsel has either suborned perjury, fabricated a defense, or both, the courts have generally refused to find that the defendant was prejudiced where no objection was made to prosecutor's remarks. Thus, in *State v. Davit*, 125 S.W.2d 47 (Mo.), appellant was convicted of murder and sentenced to life imprisonment. In his closing argument the prosecutor referred to appellant's counsel as "Dr. Lacy, the old medicine man" and accused him of going to Kansas City to establish appellant's alibi—"so far away that the State couldn't check it." The prosecutor went on to say: "I will say they frame alibis; they doctor alibis; and I say Mr. Lacy, you framed this alibi and you know it." But during this argument and in the face of these accusations, Mr. Lacy, appellant's counsel, sat mute and made no objections of any kind. The court said (page 54):

> "In ordinary circumstances we would reverse and remand the cause for this argument alone. For the sake of the dignity of the court, if nothing else, counsel ought to have been curbed, if he would not restrain himself. Conceding for the sake of argument that the foul odors of this case arose from a criminal cesspool, that is no reason why they should be permitted to permeate the court room. But the trial is done. The question now before us is one of reversible error affecting the rights of the appellant. When the prosecutor made his nauseating charges appellant's counsel sat silent. The prosecutor had a right to argue from the record, within the bounds of professional decorum, that the alibi testimony was false. He was suffered to go on without objection or restraint until after the most vituperative part of the argument had been made. It appears from the record that both sides were allowed the widest latitude. We do not know what appellant's counsel said in their argument. In this situation we cannot hold the argument was reversible."

In *Johnson v. United States*, 162 F. 2d 562 (9th Cir.), *rev'd on other grounds*, 333 U. S. 10, where appellant had been convicted of purchasing opium contrary to a federal statute, the deputy district attorney told the jury that he believed defense counsel had "concocted" and "made up" the "'story" of the defense. Defense counsel took no exception to these remarks. The court instructed the jury that the verdict should be drawn from evidence introduced and that "statements, if any, by counsel or the court, unsupported by your own recollection of the evidence, you will disregard." At the conclusion of the judge's instructions, defense counsel, when asked, said, "Your honor, I have no exceptions at all." The court said (page 564):

> "* * * The remarks which were complained of only after the verdict of guilty had come in constitute a good example of the way the government should not present a case to the jury. However, the evidence in the case just about demonstrates appellant's guilt, and it is hardly conceivable that the accusations by government counsel could have influenced the verdict in the slightest. Since we hold this view and since counsel for the appellant was satisfied with the situation at the time the case was given to the jury, we hold that the misconduct did not constitute reversible error."

In *Karikas v. United States*, 296 F. 2d 434 (D.C. Cir.), where the appellant sought review of her conviction of forgery and uttering checks in interstate commerce, defense counsel was accused by the prosecutor during his summation to the jury of reserving his opening statement to permit himself and the appellant "an opportunity to weave a defense after the close of the government's case." In rejecting appellant's contention that these remarks prejudiced her, the court said (page 438):

> "* * * It is noted that appellant did not object

to the prosecutor's remarks at the time they were made, and did not request the court to instruct the jury to disregard them. Having failed to do so, and the matter not amounting to plain error affecting substantial rights, she cannot complain here that she was prejudiced by what was said by Government counsel. * * *

"Moreover, the fact that appellant's trial counsel did not object indicates he did not regard the prosecutor's remarks as a reflection upon him or his client; * * *."

In *Newton v. State*, 147 Md. 71, one of the issues before the jury was whether the defendant had made an audit; the State claimed that he had not and the following occurred:

"By the court: Now that is the State's point of view, but still can't this [defendant] show that they did make an audit?

By Mr. Leach [prosecutor]: No, sir, because I have tried this very [defendant] and heard him swear that he did not."

In response to appellant's objection that this statement was prejudicial, the court said (page 92):

"* * * That these remarks on the part of the State's attorney were exceedingly improper and calculated to unfairly prejudice the jury against the defendant, is scarcely a matter for argument, and the court should have warned the jury to disregard them. But as the remarks were upon motion stricken out, and as the [defendant] at the time asked for no other action on the part of the court, we do not regard its failure to so warn the jury as reversible error."

Most courts have held that improper statements of this

kind, even though prejudicial, furnish no ground for reversal where the court promptly withdrew the offending remarks from the jury by instructing it to disregard them. *See Cohen v. State,* 173 Md. 216, 230-232; where the court ruled them out as improper, *Callan v. State,* 156 Md. 459, 468-469; *Cox v. State,* 3 Md. App. 136, 141; *State v. Reid,* 39 N. W. 796 (Minn.) ; *State v. Shores,* 7 S. E. 413 (W. Va.) ; where the prosecutor was admonished by the court and thereupon apologized, *Wheeless v. State,* 18 S. E. 303 (Ga.) ; or where the court acted in such a manner as to render the remarks and statements harmless, *Miller v. State,* 10 S. W. 445 (Tex.) ; *Dale v. State,* 15 S. E. 287 (Ga.).

In *Criglow v. State,* 36 S.W.2d 400 (Ark.), where appellant was convicted of robbery, the prosecutor accused defense counsel in his jury summation of being "an expert in establishing the defense of an alibi." The court, in finding no prejudice to the appellant, said (page 402) :

> "The prosecuting attorney remarked in his argument that counsel for appellant was an expert in establishing the defense of an alibi. Upon objection being made, the court told the jury that the argument was improper and to disregard it, and the prosecuting attorney was cautioned not to repeat the statement. We must assume that this rebuke and admonition removed any prejudice carried by the argument."

In *Garza v. State,* 94 S.W.2d 439 (Tex.), where the appellant was convicted of larceny, the prosecutor told the jury: "I don't believe that this defendant ever thought of offering this kind of defense until he talked with counsel for the defense." Upon objection to this statement by defense attorney, the trial judge said, "Let's not have any mudslinging in this case," and turning to the jury said, "Gentlemen, I think counsel for the defense is all right; if I hadn't, I would never have appointed him to represent the defendant. Both counsel in this case are honest men, trying to do their duty." In

response to appellant's claim that the prosecutor's remarks prejudiced him, the court said (page 441) :

"* * * The incident seems to have been closed with the court's statement. While the court did not in so many words sustain the objection, his action was equivalent thereto. In view of the court's statement to the jury, we fail to comprehend how injury could have resulted to the appellant."

In *Esterline v. State.* 105 Md. 629, the Court of Appeals said (page 637) :

"* * * It was undoubtedly improper for the . State's Attorney to have told the jury that he could have proved by a hundred witnesses the falsity of Mary J. Diehl's testimony, that the prisoner had finger marks on his throat immediately after the shooting. This remark was objected to as improper, and the Court in the presence of the jury told the State's Attorney that it was not proper for him to make that statement. The State's officer then apologized for making it and promptly withdrew the objectionable statement. It is not to be presumed that a body of competent and honest men, sworn to try the issue of the traverse upon the evidence produced before them, would permit the statement to influence their finding, after the Court had pronounced it to be improper, and after it had been withdrawn from their consideration."

In *Holbrook v. State, supra,* at page 270, we noted that "a significant factor in determining whether the jury were likely to have been misled or influenced to the prejudice of the accused by an improper remark [by the prosecutor] is whether the trial court took appropriate action to overcome a likelihood of prejudice, *e.g.,* informing the jury that the remark was improper, striking

it and admonishing them to disregard it." Where, as in the present case, the prosecutor's remarks had such a clear potential of prejudicing appellant's right to a fair trial, and objection was immediately made thereto on the ground that they were "absolutely improper and out of order," we think the situation thus created was one screaming out for the forceful interdiction of the trial judge and, at the least, a directive to the prosecutor to apologize to defense counsel for the remark—this being all that defense counsel had requested be done. But even without the apology sought by the appellant, it is not unlikely that the jury would have considered the prosecutor's remarks, standing alone, as the practical equivalent of an argument that the claim of self-defense was so far-fetched that it was utterly devoid of any merit. Had not the trial judge, therefore, in referring to the prosecutor's remarks, instructed the jury that "it is no improper remark," a different case may well have been presented than that now before us. But the trial judge's statement, viewed in the light of his refusal to order the prosecutor to apologize to defense counsel, necessarily reinforced and gave significant substance to the prosecutor's argument, with the result likely created in the mind of the jury that the trial judge, like the prosecutor, thought appellant's claim of self-defense was a "fiction manufactured by defense counsel"—a conclusion which was considerably strengthened when the prosecutor, without rebuke or correction from the court, interrupted defense counsel's closing summation to the jury to state that his remarks were not only not improper, but the court had ruled that they were indeed proper.

We, of course, have no way of knowing whether the jury was actually misled or prejudicially influenced by the remarks in question. We do know, however, that self-defense was the heart and soul of appellant's defense, and that the prosecutor's remarks had a clear tendency, particularly when not neutralized by the trial judge, to convey the thought to the jury that defense counsel suborned perjury, or that he fabricated the de-

fense, or that the defendant himself committed perjury in testifying that he committed the homicide in self-defense. With the case in this posture, it went to the jury and while it would appear from the record that appellant's claim of self-defense had little support in the evidence, nevertheless, as observed in *People v. Saylor*, 149 N. E. 767 (Ill.), involving a not dissimilar issue, "[c]onviction should be the result of a fair trial and not of the conclusions which a court of review may reach from a consideration of the evidence contained in the record where there has not been a fair trial."

We recognize, of course, that if every remark made by counsel outside of the testimony were grounds for reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of the trial, even the most experienced counsel are occasionally carried away by this temptation. *See Holbrook* at page 270. But we also feel strongly that when an accused is on trial, as here, for a capital offense, the stakes are high and the accused is entitled to a fair trial by the jury uninfluenced by recriminations of counsel or prejudicial remarks by the trial judge. We hold then—on the facts of this case—that because of the improper nature of the prosecutor's remarks to the jury, the trial judge's failure to take appropriate corrective action, and his reinforcement of the damaging effect of the prosecutor's remarks, appellant was not afforded a fair trial.[1]

## II

Appellant also contends that (a) there was no probable cause shown by the search warrant to authorize the search of his room, and that (b) the search warrant was too general because it did not reasonably particularize

1. In so concluding, we note that this is not a case like *United States v. Hoffa*, 349 F. 2d 20 (6th Cir.), where the prosecutor's remarks were made in response to a prior attack in the same vein by defense counsel. Nor is it a case where the attack on defense counsel appears to have been such as would have had no tendency to discredit the accused because of relating to counsel personally. *See, e.g., Crawford v. Commonwealth*, 136 S.W.2d 754 (Ky.); *People v. Means*, 225 P. 2d 279 (Cal.).

the premises to be searched. We will dispose of these contentions since they will no doubt be raised again at appellant's new trial. We find both to be without merit.

The application for the search warrant described what had transpired in and around the tavern before and after the shooting occurred. Among other things, it stated that "James Robert Goodman was shot with a firearm three times, twice in the head and once through the left muscle into the left side of the chest. Later investigation determined that he was shot with a .22 caliber weapon, evidence consisted of spent .22 caliber casings around and in the 1955 Ford Sedan he was occupying and a spent projectile recovered from his head"; that the appellant and Goodman, the deceased, had been inside the restaurant and "had a considerable amount of conversation"; that they "left the restaurant together approximately ten minutes prior to James Robert Goodman being found wounded in his automobile parked on the parking lot of the Alamo Restaurant"; that at about ten minutes after they left, a witness observed the appellant "standing on the parking lot and he had blood on his shirt and about his chin and pointed to a 1953 black Ford of James Robert Goodman and said that he, meaning the man in the Ford, had cut him with a knife"; and another witness said that about the same time, he observed the appellant "holding a gun in his hand and firing at a 1953 black Ford on the parking lot of the Alamo Restaurant." The application also described in detail the exterior of the premises to be searched, giving its address, and stating that it was a single split level dwelling "occupied by Mildred Muir who rents a room to George Carroll Reidy." It also stated that "located on the carport is an old model Renault automobile, cream in color, bearing Md. registration DX 6709, automobile has identification of John Carroll Reidy on back seat." As issued, the warrant authorized search of the Muir premises and the seizure of "any .22 calibre weapon, ammunition and any blood clothing."

Upon execution of the warrant on June 28, 1968, the

top floor of the dwelling was searched, consisting of three bedrooms, one of which belonged to the appellant, and a commonly used bathroom. The objects seized were a sheet and a bedspread from the appellant's bed, a .22 caliber pistol clip and a .22 caliber bullet from the appellant's closet, and a T-shirt from the clothes hamper in the bathroom. The T-shirt and the bedspread were determined to have traces of blood on them.

We think that it was reasonable, given the information set out in the application for the warrant, for police to believe that the gun used in the crime could be found in appellant's house. As we said in *Grimm v. State*, 6 Md. App. 321, 328:

> "* * * we think there was a 'substantial basis' set forth in the application to support the affiant's conclusion that the guns used in the crime could be found in appellant's trailer home —it being altogether reasonable to believe that the guns had been carried away from the scene of the crime by the perpetrators and, having thereafter gone to appellant's trailer, had taken them there."

Further, as the Court of Appeals said in *Tucker v. State*, 244 Md. 488, where the application for the search warrant showed the existence of criminal activity in one room but the warrant authorized the search of the entire premises (page 496):

> "* * * We have said many times that there is no formula which can be used to measure the particularity with which premises must be described and that the adequacy of the description in every case will depend on the facts and circumstances there present."

Under the circumstances, we think that the police, not knowing which room of the dwelling was occupied by the appellant, described the place to be searched with suffi-

cient particularity that the warrant was not a prohibited general one. See *Frey v. State,* 3 Md. App. 38.

*Judgment reversed; case remanded for a new trial.*