TONY MITCHELL A/K/A Gregory Howard Carpenter
and FARRAKHAN BEY A/K/A Frank James Gainey
*v.* STATE OF MARYLAND

[No. 223, September Term, 1979.]

*Decided December 21, 1979.*

The cause was argued before GILBERT, C. J., and MORTON
and WILNER, JJ.

*Thomas J. Saunders, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellants.

*Stephen Rosenbaum, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County, Warren F. Sengstack, State's Attorney for Calvert County,* and *Stephen L. Clagett, Deputy State's Attorney for Calvert County,* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

On March 4, 1977, three men armed with at least one handgun entered the Knotty Pine Bar and Grill, a tavern owned by Viola and Burton Foote. They proceeded then (1) to take currency and checks from the tavern cash register and safe, from Viola Foote's purse, and from Marcus Gantt, a customer who entered the establishment while the robbery was in progress, (2) to shoot and kill John Bishop, an employee of the tavern, (3) to shoot and wound Burton Foote, and (4) to hit Viola Foote on the head with a gun. The three assailants were subsequently identified as Walter West, Tony Mitchell, and Farrakhan Bey.

As a result of this eipsode, a series of multi-count indictments were returned against West, Mitchell, Bey, and one Richard Bresee, who had allegedly conspired with the first three to commit the Knotty Pine robbery but had not actually participated in its commission. The indictments against Mitchell were as follows:

(1) No. 18,118 charged eight crimes involving John Bishop: murder, robbery with a deadly weapon (hereafter "armed robbery"), assault and battery, use of a handgun in the commission of a felony or crime of violence (hereafter "handgun violation"), and four counts of conspiracy.

(2) No. 18,121 charged sixteen crimes involving Burton Foote: armed robbery, larceny, receiving stolen goods, handgun violation, four counts of assault, and eight counts of conspiracy.

(3) No. 18,124 charged the same sixteen crimes as No. 18,121, with respect to Viola Foote.

(4) No. 18,134 charged twelve crimes involving Marcus Gantt: armed robbery, larceny, receiving stolen goods, handgun violation, two counts of assault, and six counts of conspiracy.

The indictments against the other three — West, Bey, and Bresee — were similar to those returned against Mitchell, but are not particularly relevant to this appeal.

On March 6, 1977, a man later identified as Bey coerced Susan Axley at gunpoint to drive him to her home in her car. Bey removed money from her handbag. Upon arriving at the Axley home, Bey forced Thomas Axley, Susan's husband, to transport him to the water where he took a motorboat belonging to Mrs. Daniel Head.

As a result of this occurrence, Bey was charged under three more indictments — Nos. 18,125, 18,126 and 18,137 — for the crimes committed on March 6 against Susan Axley, Thomas Axley, and Mrs. Daniel Head.

Over the objection of all four defendants, trials of Bey, West, Mitchell, and Bresee for the March 4 events and trial of Bey for the crimes committed on March 6 were consolidated and held concurrently before the same jury sitting in the Circuit Court for Prince George's County.

At the conclusion of the State's case — well after jeopardy had attached to each of the four defendants — the State *nol prossed* a number of counts in each indictment. The remaining counts were subsequently submitted to the jury, which returned a verdict on each of them. The result, as to Mitchell, was as follows:

(1) No. 18,118 (Bishop): all counts except murder and the handgun violation were *nol prossed;* Mitchell was acquitted of murder and convicted of the handgun violation.

(2) No. 18,121 (Burton Foote): all counts except armed robbery, assault with intent to murder, handgun violation, and conspiracy with Bey and West to commit armed robbery were *nol prossed;* Mitchell was acquitted of assault with intent to murder and convicted of the remaining counts.

(3) No. 18,124 (Viola Foote): same as No. 18,121 except that the jury convicted on all counts not *nol prossed.*

(4) No. 18,134 (Gantt): all counts except armed robbery, handgun violation, and conspiracy with Bey and West to commit armed robbery were *nol prossed;* Mitchell was convicted on remaining counts.

Bey was convicted on all counts against him that were submitted to the jury, and West and Bresee were also convicted of various crimes. It is not necessary to catalog the outcome of all the charges against them.

All four defendants appealed from the judgments entered upon the guilty verdicts. They alleged numerous grounds for reversal, one of which was the prejudicial joinder of Bey's trial for the March 6 incidents, which did not involve in any way the other three defendants, with the trial of all four for the March 4 events. This Court, in an unreported *per curiam* Opinion, *West, et al. v. State* (No. 1148, Sept. Term, 1977, filed July 13, 1978), reversed all guilty verdicts against all defendants on the sole ground of prejudicial joinder and remanded all cases for new trials. We specifically did not reach any of the other issues presented in that appeal, concluding that it was not necessary to do so.

On remand, in response to various motions, the court (1) denied the motions of Mitchell and Bey to dismiss the indictments on grounds of double jeopardy, (2) granted the State's motion to consolidate the trial of all defendants with respect to charges emanating from the March 4 incident, and (3) did not decide certain motions to suppress evidence. Mitchell and Bey have taken an immediate appeal from the denial of their motions to dismiss. Such a ruling, although interlocutory in nature, is nevertheless immediately appealable. *See Stewart v. State,* 282 Md. 557 (1978).

The issues raised by appellants are stated as follows:

> "I. The acquittal of Appellant Mitchell of murder and assault with intent to murder in indictment #18,118 collaterally estops the State from prosecuting Appellant Mitchell for either the remaining charge in indictment #18,118 or any

of the other charges arising out of the March 4 incident.

II. The State is barred from further prosecuting Appellants due to the double jeopardy clause of the fifth amendment.

 A. The Court of Special Appeals Failed to address questions concerning the sufficiency of the evidence.

 B. The Court of Special Appeals Failed to address questions relating to the overall trial and violations of Appellants' rights.

 C. Retrial of Appellants would otherwise subject them to double jeopardy.

 D. The duplicitous conspiracy charges against Appellant Mitchell will subject him to double jeopardy."

(1) *Retrial of Mitchell on Indictment No. 18,118*

As noted, Indictment No. 18,118 contained eight counts, each dealing with a crime perpetrated on John Bishop. Six counts were *nol prossed;* two were submitted to the jury, which acquitted Mitchell of murder and convicted him of the handgun violation.

It is, of course, clear that Mitchell may not be retried either on the murder count, of which he was acquitted, or on the counts that were *nol prossed* by the State without his consent; and it does not appear that the State has made any effort to the contrary. The question here is whether he may be retried on the handgun count; and to resolve that question, we must consider the effect of a *nol pros,* as opposed to a direct acquittal, in terms of the "constitutionalized" doctrine of collateral estoppel.

Conviction of Mitchell on the handgun count in the face of a direct acquittal on all of the underlying felonies or crimes of violence to which that count could relate would clearly have been an inconsistent verdict. When rendered at the same trial, however, such inconsistent verdicts may stand, for, as

described by the Court in *Ford v. State,* 274 Md. 546, 552 (1975):

> (1) "Each count of an indictment is regarded as if it were a separate indictment, and the inquiry is whether the evidence is sufficient to support the conviction *on that count without regard to the disposition of other counts.*" (Emphasis supplied), quoting from *Williams v. State,* 204 Md. 55, 64 (1954); and
>
> (2) "Consistency in the verdict is not necessary ...

> "That the verdict may have been the result of compromise, or of a mistake on the part of the jury is possible. But verdicts cannot be upset by speculation or inquiry into such matters." *Id.,* quoting from *Dunn v. United States,* 284 U.S. 390, 393-394 (1932).

The same rationale does not necessarily apply, however, where the inconsistency would arise from separate and successive trials. Rather than being the possible product of compromise or mistake, an inconsistent verdict rendered after a second trial would involve the *relitigation* of facts and issues previously decided in the defendant's favor; and the doctrine of collateral estoppel precludes that from happening.

The United States Supreme Court made clear in *Ashe v. Swenson,* 397 U.S. 436 (1970), that collateral estoppel applies to criminal cases and is of Constitutional dimension. It is "embodied in the Fifth Amendment guarantee against double jeopardy," 397 U.S. at 445, and thus binding upon the States through the "due process" clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784 (1969); *Greene v. Massey,* 437 U.S. 19 (1978). This doctrine, so embodied in the broader concept of double jeopardy, was defined by the Court in these terms, 397 U.S. at 443: "It [collateral estoppel] means simply that *when an issue of ultimate fact has once been determined* by a valid and final judgment, *that issue* cannot again be litigated between the same parties in any

future lawsuit. . . ." (Emphasis supplied.) *See also Simpson v. Florida,* 403 U.S. 384 (1971); *Harris v. Washington,* 404 U.S. 55 (1971). The Court of Appeals said of this doctrine in *Powers v. State,* 285 Md. 269 (1979), that

> "The primary purpose of the doctrine of collateral estoppel . . . is to avoid compelling an accused to prove his innocence to two or more juries. More precisely, the doctrine's purpose is to avoid compelling relitigation of a fact material to the question of innocence *when it appears substantially certain that a jury has already decided that fact in the accused's favor."* 285 Md. at 287. (Emphasis supplied)

and

> ". . . If the jury in the second trial were to convict on the related offense, *inconsistent verdicts in successive trials would result —* an acquittal on one count in the first trial and, in the second trial, a conviction on the related count *having a common issue of ultimate fact essential to conviction.* Under established collateral estoppel principles, such a result is impermissible." 285 Md. at 288. (Emphasis supplied)

and

> "The very nub of collateral estoppel is to extend *res judicata* beyond those cases where the prior judgment is a complete bar. The Government is free, within the limits set by the Fifth Amendment, . . . to charge an acquitted defendant with other crimes claimed to arise from the same or related conduct; but it may not prove the new charge by asserting facts *necessarily determined against it on the first trial,* no matter how unreasonable the Government may consider that determination to be. . . ." (Citations and footnote omitted) (Emphasis added) 285 Md. at 285, quoting *United States v. Kramer,* 289 F.2d 909, 916 (2d Cir. 1961).

As both the statute (Md. Ann. Code art. 27, § 36B(d)) and *Ford v. State, supra,* 274 Md. 546, make clear, in order to convict Mitchell at a retrial of the handgun violation charged in Indictment No. 18,118, it will be necessary to prove beyond a reasonable doubt that he used a handgun in the commission of a felony or crime of violence committed against John Bishop as charged in the other counts in that indictment.[1] Thus, under the principles noted above, had there been in the earlier case a conclusive determination that Mitchell did not commit such a felony or crime of violence, that determination simply could not be relitigated.[2]

The critical question here, however, is whether there has in fact been a prior determination, in Mitchell's favor, of the facts necessary to support a new conviction on the handgun charge. Does a *nol pros,* entered at the conclusion of the State's case, but without benefit of any factual predicate or explanation for it, serve as a determination of ultimate issue of fact in the defendant's favor so as to trigger the application of collateral estoppel? From the context of the cases in which the doctrine *has* been applied, and from the language used

---

1. The handgun count (Count 4) in No. 18,118, unlike the other counts in that indictment, did not specifically refer to Bishop as the victim; however, when considered in the context of the four indictments returned against Mitchell, and the manner in which they were tried, submitted to the jury, and disposed of, it is clear that that count must be so confined. Each of the four multi-count indictments dealt with a different victim — Bishop (18,118), Burton Foote (18,121), Viola Foote (18,124), and Gantt (18,134). Each included a separate but identical handgun charge, all four of which were submitted to the jury under instructions by the court that related to a particular victim (Transcript, pp. 1063, 1064). The jury convicted Mitchell on all four handgun counts and sentences were imposed on each of them. In light of this, it would be grossly misleading and a clear violation of double jeopardy principles to consider Count 4 of No. 18,118 as involving anything other than a felony or crime of violence committed against Bishop.

It is also important to note that the evidence produced against Mitchell with respect to Bishop did not suggest, much less establish, any felony or crime of violence other than those charged in the other counts of No. 18,118. To the extent that the State may wish, upon a retrial, to show such additional offense, it would clearly be precluded from doing so by Burks v. United States, 437 U.S. 1 (1978).

2. The State's reliance upon Burks v. United States, *supra,* for the proposition that retrial after appellate reversal is precluded *only* where the reversal is for evidentiary sufficiency is misplaced. *Burks* did not involve the application of collateral estoppel, and we do not read that case as *sub silentio* overruling the principles clearly enunciated in Ashe v. Swenson, *supra,* and Sealfon v. United States, 332 U.S. 575 (1948).

by the Courts in describing and applying the doctrine, we think not.

*Ashe v. Swenson* and the other cases in which the Supreme Court has invoked this doctrine have all involved situations where the issues of fact sought to be retried had previously been adjudicated by means of a verdict rendered by the trier of fact. The defendant had been acquitted by a judge or a jury, and that acquittal necessarily involved the resolution of disputed underlying facts in the defendant's favor. *See,* for example, in addition to *Ashe, Simpson v. Florida, supra,* 403 U.S. 384; *Harris v. Washington, supra,* 404 U.S. 55; *Turner v. Arkansas,* 407 U.S. 366, 370 (1972). That was also the case in *Powers v. State, supra.* We are aware of no instance in which the doctrine has been held triggered by a *nol pros.*

As the Supreme Court pointed out in *Ashe,* collateral estoppel is a doctrine that arose in the civil, rather than the criminal, law; and it is therefore not inappropriate to look at how the doctrine has been viewed and applied in civil cases. The touchstone of the doctrine in the civil law is the requirement that the earlier determination — that which forms the basis of the estoppel — be a judgment *on the merits;* and in that context, it has generally been held that a judgment for the defendant entered upon a voluntary nonsuit, *nolle prosequi,* or *non prosequitur* is *not* a judgment on the merits and does not bar a subsequent action. *See Steele v. Beaty,* 2 S.E.2d 854 (N.C. 1939); *Bucci v. Detroit Fire & Marine Ins. Co.,* 167 A. 425 (Pa. Super. 1933); 2 Freeman on Judgments 1584 (§ 753); 50 C.J.S. *Judgments* § 632.

The reason for this is evident from the very nature of a nonsuit, a voluntary dismissal. It terminates the action *prior* to a decision on the merits. The case is ended without the adjudication of disputed facts necessary to render a judgment on the merits. This is equally true with a *nol pros* entered in a criminal case. Although if entered after jeopardy attaches and without the defendant's consent, it serves as an acquittal and, by virtue of traditional double jeopardy principles bars reprosecution for the same offense, it nevertheless, like its cousin the nonsuit, terminates the cause without an adjudication of disputed facts. The defendant is deemed

acquitted and the imputation of guilt is removed (*see Greathouse v. State,* 5 Md. App. 675, 685-687 (1969)), but there has been *no* adjudication that he did not commit the offense alleged.

When this aspect of a *nol pros* is considered in light of the language used by the Supreme Court in *Ashe* and by the Court of Appeals in *Powers,* it becomes apparent that such a premature termination does not suffice to trigger the "constitutionalized" doctrine of collateral estoppel. An "issue of ultimate fact" has not "once been determined." *Ashe,* 397 U.S. at 443. Retrial on the handgun charge does not involve the assertion by the State of "facts necessarily determined against it on the first trial. . . ." *Powers,* 285 Md. at 283. *See also Sealfon v. United States, supra,* 332 U.S. 575; *Brown v. Ohio,* 432 U.S. 161, 165 (1977); *Sanabria v. United States,* 437 U.S. 54 (1978); especially footnote 31, p. 73; *United States v. Nash,* 447 F.2d 1382 (4th Cir. 1971).

Accordingly, the court did not err in denying Mitchell's motion to dismiss Count 4 of Indictment No. 18,118.

### (2) *Retrial of Mitchell on Other Remaining Charges*

At Mitchell's "express direction" but without relevant authority, it is contended that Mitchell's acquittal on the murder count in No. 18,118 also requires dismissal of the remaining charges under the other indictments. This contention is patently without merit. As noted, the other indictments charged entirely separate offenses against other persons. The fact that the jury may not have been convinced beyond a reasonable doubt that Mitchell murdered Bishop would have no effect on the issue of whether he robbed or assaulted the Footes or Gantt, or conspired to do so. Neither collateral estoppel nor more general principles of double jeopardy would serve to preclude retrial on those open counts.

### (3) *Failure to Decide Certain Issues Presented In the Earlier Appeal*

In the earlier *per curiam* Opinion of this Court, we said: "On appeal the appellants present fifteen questions for our review. Our decision to reverse the case on the first question

[improper joinder] renders it unnecessary to discuss the balance of the issues presented. Upon retrial those questions may not arise." Four of the fifteen issues involved, directly or indirectly, the sufficiency of the evidence in support of some of the convictions; the others dealt with alleged errors in the admission of evidence, instructions to the jury, sentencing, or the trial court's failure to merge certain of the convictions.

In this appeal, Mitchell and Bey contend that our failure to reach those remaining issues will somehow place them in double jeopardy if they are retried. To the extent that the alleged errors dealt with matters other than evidentiary insufficiency, we may dispose of this contention summarily. Any errors pertaining to sentencing have obviously been cured and pose no double jeopardy problem. With respect to any alleged errors in trial procedure, there is no prejudice; had be considered those issues and decided them in appellants' favor, the effect would still have been a remand for retrial. *Burks v. United States, supra.*

The claims of evidentiary insufficiency involve different and more substantial considerations. It has long been the common, and preferred, practice of appellate courts to decide only those issues that are necessary to render a proper judgment or mandate. Where multiple claims are presented but a decision upon one (or less than all) will suffice to decide the appeal, appellate courts have rather consistently declined to address the other, non-essential, issues. This practice is justified by principles of judicial efficiency as well as the equally long established practice of declining to decide issues that, in a practical sense, become moot.

Until *Burks v. United States, supra,* there was no reason to except from this practice issues dealing with evidentiary sufficiency. Under *Gray v. State,* 254 Md. 385, 393 (1969), *cert. den.* 397 U.S. 944, "the practice of remanding for a new trial after reversal for insufficiency of the evidence rather than remanding for entry of a judgment of acquittal, [was] permissible...." Thus, where reversal of a criminal conviction was required on some other ground, there was no reason to pore over the record to determine the sufficiency

question. As a retrial was ordinarily ordered, and would have been ordered even if the sufficiency question had been decided in the accused's favor, that question became moot and no prejudice resulted to the defendant from not deciding it.

Under *Burks* and *Green v. Massey, supra,* 437 U.S. 19, however, that situation no longer prevails. *See Mackall v. State,* 283 Md. 100, 114 (1978). The Supreme Court has made clear that "the Double Jeopardy Clause precludes a second trial once a reviewing court has determined that the evidence introduced at trial was insufficient to sustain the verdict. . . ." *Greene,* 437 U.S. at 24. Thus, at least since *Burks,* when an appellant in a criminal case raises the sufficiency issue on appeal, he has a definite and Constitutionally based interest in having it determined. Because of *Burks,* the sufficiency issue can no longer become moot, notwithstanding the existence of other grounds for reversal. Unless the appellant has in some way waived his right to appellate review on that issue, it must be decided, for it is upon that decision that the question of a retrial will hinge.

*Burks* was decided a month prior to our *per curiam* decision in appellants' earlier appeal. Thus, despite their failure to press for a decision on the sufficiency issues following the filing of the panel's Opinion, to the extent that such a decision is germane to the issue of double jeopardy presently before us, they are entitled at this point to have those issues resolved.

Appellants raise in this appeal four issues dealing with the sufficiency of evidence introduced in their prior trial, which they contend should have been decided in the earlier appeal. These are stated as follows:

> 1. Did the variance between the charges that the appellant carried named persons with the intent to conceal them and the proof offered which related only to the intent of causing them to be carried warrant a dismissal of the charges of kidnapping?

> 2. Was the evidence sufficient to establish beyond a reasonable doubt that force or fraud was used to carry Thomas Axley?

3. Was the evidence sufficient to establish beyond a reasonable doubt that appellant Bey's acquisition of clothes and money belonging to Thomas Axley constituted a robbery?

4. Was the evidence sufficient to sustain appellants' conviction of the robbery of Marcus Gantt?

Of these four questions, the first three concern the kidnapping and related charges brought against appellant Bey with respect to the March 6 incident. But those charges have been severed, and the record does not indicate any imminent retrial as to them. All that is properly before us in this interlocutory appeal is the denial of appellant's motions to dismiss the indictments arising from the March 4 incidents. Accordingly, it is only the fourth question that is relevant to the double jeopardy question at issue here; the other three are premature.

Before us in this appeal is the record made at the earlier trial, from which the relevant sufficiency question arose. Also before us — in part by references and incorporations in appellants' brief — are the briefs filed in the earlier appeal in which that question was presented and discussed.[3] It is therefore not only necessary, but also appropriate, that we consider and decide it at this juncture.

The standard to be applied in judging the issue of evidentiary sufficiency is that expressed in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781 (1979) — whether there was enough evidence for a rational factfinder to have found proof of guilt beyond a reasonable doubt. There is no need for us to recount all of the evidence adduced against these appellants with respect to the robbery of Marcus Gantt. It will suffice that, having read the relevant portions of the record at the trial, in light of the briefs filed in the prior appeal, we believe without any question or doubt that there was sufficient evidence, under the *Jackson* standard, to sustain the convictions complained of. The testimony of Mr. Gantt

---

**3.** In this appeal, appellants have submitted their case on their brief, which does raise and discuss the issue at hand.

alone, if believed, sufficed to establish that he was robbed by appellants of $50. For that reason, retrial on the counts to which that sufficiency argument was raised is not precluded.

### (4) *Other Issues*

Appellants attempt to bring under the umbrella of double jeopardy, and thus to have resolved at this juncture, a number of matters that have nothing to do with double jeopardy. These include alleged errors in the court's instructions to the jury at the earlier trial, the correctness of the court's refusal to suppress certain evidence in advance of a retrial, and the court's consolidation, for retrial, of all charges emanating from the March 4 Knotty Pine robberies. Those issues are not properly before us at this point, and we shall therefore decline to consider them.

*Denial of motion to dismiss affirmed; case remanded to Circuit Court for Prince George's County for retrial in accordance with this opinion; appellants to pay the costs.*