# JEROME WILLIAMS AND ROOSEVELT SNEED v. STATE OF MARYLAND

[No. 360, September Term, 1981.]

*Decided December 4, 1981.*

The cause was argued before MORTON, LOWE and WILNER, JJ.

*Louis P. Willemin, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellants.

*Stephen Rosenbaum, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Charles F. Lamasa, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

In the Criminal Court of Baltimore, Jerome Williams and Roosevelt Sneed were convicted by a jury of felony murder. Sneed was also convicted of unlawful use of a handgun. This was the second attempt by the State to convict those appellants, the first having ended in a mistrial when the jury failed to arrive at a verdict. At the conclusion of the first trial, prior to submission of the case to the jury, the State "abandoned" an attempted robbery count in what appellants saw as "an obvious effort to force the jury into returning a guilty verdict on the greater count" of robbery with a deadly weapon. The new trial proceeded without the attempted robbery count available to the State for appellants' conviction under it. Although the indictment still contained a robbery with a deadly weapon count when the second trial began, the court granted the appellants' motions for judgment of acquittal of that charge at the conclusion of the introduction of evidence. That action precluded the jury from concluding that appellants had committed a robbery with a deadly weapon even as the underlying felony for purposes of the felony murder charge. *Ford v. State,* 274 Md. 546, 551 n. 3 (1975). Acknowledging that concept, the judge instructed

the jury that it could consider felony murder only on a theory of attempted robbery as the prerequisite underlying felony.

# I

Appellants contend that such an instruction was improper; that by doing so the judge violated the prohibition against twice placing them in jeopardy; and, absent the improper consideration of attempted robbery, the evidence was insufficient because there was no underlying felony upon which to predicate their felony murder convictions.

Although appellants, at argument, confessed some difficulty in articulating precisely that principle upon which they rely, we have by Holmesian reasoning [1] arrived at that contention upon which we believe they must finally rest. Synergistically combining the State's abandonment of the attempted robbery count at the first trial with *Simms v. State,* 288 Md. 712, 718 (1980), holding that such an abandonment operates as a nol pros, appellants leap to the conclusion which serves as the foundation for all three of their contentions:

> "Thus, the State's action operated as an acquittal of the charge of attempted robbery in the first trial."

From there it would have been easy to syllogize that an acquitted charge may not be used by a factfinder as an underlying crime for purposes of a felony murder conviction. See *Ford v. State, supra* at 551 n. 3. Appellants' articulable difficulty, however, derives from their need to circumvent or explain why the abandonment, even when viewed as a nol pros, "operated as an acquittal".

In *Ward v. State,* 290 Md. 76 (1981), the Court of Appeals, through Judge Eldridge, exhaustively analyzed the effect of

---

1. "How often have I said to you that when you have eliminated the impossible, whatever remains, however improbable, must be the truth. Sherlock Holmes to Dr. Watson, Ch. 6 of "The Sign of Four" by A. Conan Doyle.

a nol pros under varying conditions, quite similar to those before us.

> "In light of the defendant's argument, it is necessary to examine the nature of a nolle prosequi and the often repeated statement that a nolle prosequi, after jeopardy attaches and without the defendant's consent, 'operates as an acquittal.'" *Id.* at 82.

His examination concluded that there is nothing inherent in the nature of a nol pros which causes its entry to operate as an acquittal of the underlying offense; and thus, the proposition that it "'operates as an acquittal'" is not a characteristic of a nol pros itself. *Id.* at 85. He therefore found it necessary to analyze the proposition in light of its development under a body of double jeopardy law, finding that it originated as an application of the same double jeopardy principle which prevents a retrial after an unconsented and unnecessary mistrial. *Id.* at 91-92. The Court then looked at its own cases containing "overly broad language" which, "if taken out of context", seem to support the principle relied upon by Ward in that case and by appellants here.

*Bynum v. State,* 277 Md. 703, *cert. denied,* 429 U.S. 899 (1976), is repeatedly relied upon by appellants here, but was carefully explained by Judge Eldridge as holding only that an unconsented nol pros of a lesser included offense (simple robbery), after jeopardy had attached, did not operate as an acquittal of a greater charge (armed robbery), proof of which implicitly necessitated a conclusion of guilt of the abandoned underlying crime. *Ward, supra* at 92. The Court then applied its analysis to the facts of the *Ward* case which contained a contrasting side of the argument presented in the case before us.

In *Ward,* the accused claimed that an unconsented abandonment of a murder count (using the statutory form set forth in Md. Ann. Code (1957, 1971 Repl. Vol.) Art. 27, § 616, which encompasses murder, manslaughter, or being an accessory thereto), in an initial trial after jeopardy had attached, precluded his retrial upon an accessory charge, the

conviction of which had been reversed. Appellant Ward had sought to distinguish *Bynum* by arguing that *Bynum* involved only a single trial, whereas *Ward* involved successive trials following reversal on appeal. Despite *Bynum's* holding, argued *Ward*, that case parenthetically stated the applicable law when it said:

> "We therefore hold that the double jeopardy prohibition, *though barring subsequent prosecution for offenses charged in counts dismissed by a nolle prosequi entered without the consent of the accused after jeopardy has attached,* has no application in the context of the same prosecution which continues on other counts." *Bynum, supra* at 709 (emphasis partially added).

That was the "overly broad" language, said Judge Eldridge, and it did not contemplate a second trial after a successful challenge to an earlier conviction, but merely attempted to paraphrase the general rule "that the entry of an unconsented nolle prosequi, after jeopardy attaches, ordinarily precludes a subsequent prosecution for the offense." *Ward, supra* at 97.

But more important was that which the *Ward* Court saw as the reason for the *Bynum* holding:

> "The reason for our holding was that settled double jeopardy principles did not preclude the continuation of the same trial on a different count, as the defendant was not being 'twice put to trial.' *Id.* at 707." *Ward, supra* at 92.

It thus appears that *Bynum's* reasoning rested substantially upon the continuing nature of the jeopardy of the greater òffense, proof of which required a finding of at least those facts necessary to convict for the nol prossed lesser offense. Consequently the accused's jeopardy was never interrupted because the underlying crime element remained intact as an ingredient of the major offense, despite its separated disposition out of that context. *Ward* logically

reasoned that the nol pros of the major offense (contextually containing the minor element) was not an acquittal as to the lesser offense as a separate charge, and in no way precluded the continuation of the trial under the separate accessory count which had not been abandoned or adjudicated. *Id.* at 94. In both cases the defendants were entitled to a verdict without interruption of jeopardy once exposed, which each received.

In the case before us, it is equally clear that the nol pros, as such, does not serve as an acquittal. If the first case had ended on a conviction rather than a mistrial, *Bynum,* as written, was clearly controlling. Despite the nol pros, appellants could have been convicted of felony murder by using the nol prossed charge as the underlying felony. *Ward* simply adds emphasis to that by holding that whatever exposure an accused had before appellate reversal, he will have upon retrial afterward. *Ward* nodded to the "unmitigated fiction" used to avoid double jeopardy that an appellate reversal wipes the slate clean (*see Sweetwine v. State,* 288 Md. 199, 205 (1980), *cert. denied,* 447 U.S. 1017 (1980), quoting *North Carolina v. Pearce,* 395 U.S. 711, 719-721 (1969)), but adhered to the more rational observation of jeopardy continuity in context from initial exposure to final conclusion.

In regard to the felony murder charge (with attempted robbery as its prerequisite felony) in the case at bar, jeopardy attached in the first trial and was not disturbed by the nol pros of attempted robbery as a separate count, nor did the mistrial interrupt that continuity. Upon retrial, as in *Ward,* the State did not attempt a prohibited subsequent prosecution under the nol prossed count, it simply proceeded to provide appellants that to which they were entitled, a verdict on the felony murder charge, *Ward, supra* at 94, as if a mistrial had never occurred. Simplified, it seems that *Ward* carries, among others, the messages:

1. that there is nothing in the nature of a nol pros causing it to operate as an acquittal;

2. that a nol pros of one count after jeopardy affects only the count addressed by the nol pros and not any remaining counts or elements of counts remaining; and,

3. that the continuity of that jeopardy is unaffected by a retrial after an appeal or a properly granted mistrial.

The double jeopardy protection is a constitutional shield, not a procedural weapon. The primary need for that shield is to ward off a second thrust after acquittal *by the trier of facts.* Despite appellants' disclaimer that they do not invoke the collateral estoppel tangent of double jeopardy, when synthesized their argument by necessity rests upon the collateral estoppel theory as we have addressed the issue — in that context — most recently in *Mitchell v. State,* 44 Md. App. 451 (1979), *cert. denied,* 287 Md. 749, 755 (1980). We reasoned in *Mitchell* that, unlike an acquittal by the court for insufficient evidence, a dismissal by nol pros terminates the action prior to a decision on the merits, and end the case without an adjudication of the disputed facts necessary to render a judgment on the merits. The same logic applies here. The "critical question" here, as in *Mitchell,* is whether a nol pros (or its equivalent), entered at the conclusion of the State's case, but without benefit of any factual predicate or explanation, served as a determination of ultimate issues of fact in the defendants' favor so as to trigger the application of collateral estoppel. *Id.* at 458. In *Mitchell* we thought not and there is nothing in the case before us to change our mind.

We pointed out there, that for collateral estoppel to apply, the prior determination must have been on its merits. Although when the nol pros was entered without the defendant's consent it served as an acquittal (*Simms, supra* at 718) for purposes of a subsequent reprosecution (*Ward, supra* at 97), it nevertheless terminated the cause without an adjudication of the disputed facts: *i.e.,* there had been no determination whether the accused committed the offense alleged. Except for purposes of reprosecution, however, it

does not preclude a factfinding determination of the *ultimate fact* at issue, which may be determined only once, *Powers v. State,* 285 Md. 269, 288, *cert. denied,* 444 U.S. 937 (1979), but according to *Mitchell* at least once, within the limitations of its purpose.

Because the abandonment of the attempted robbery charge did not amount to a confession of not guilty, nor an acquittal, *Ward, supra* at 84, nor an adjudication on the merits of that ultimate fact, *Powers, supra* at 288, it was not improper to submit the felony murder charge to the jury predicated upon its preliminary determination of facts not theretofore decided. It did not constitute a violation of the double jeopardy prohibition and, upon review of all of the evidence, we hold that there was sufficient evidence to sustain a conviction pursuant to the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

## II

Contending next that the State failed to disclose the name of a witness it intended to call "to rebut alibi testimony" which appellant Williams sought to discover pursuant to Md. Rule 741 b, appellant complains that such witness should have been precluded from testifying. The judge held that the testimony did not rebut an alibi, and the rule requiring disclosure was, therefore, not applicable.

The victim's murder occurred at 3:45 a.m. Appellant Williams' "alibi" was that he could not have committed the murder because he had spent the night with his girlfriend, who substantiated his presence at her apartment from 11:00 p.m. until the next morning. Williams testified that he had arrived at her apartment around 11:00 p.m. and that "Barney Miller" was on the television. The rebuttal witness called by the State was a television company executive who testified that said program was not shown at all during the night in question.

It is perfectly clear that the rebuttal evidence did naught but impeach the credibility of appellant, who had sought to

embellish his ability to recall by reciting a fact related to his recollection of time and place. It did not go to prove that appellant was not present at the time and place he intended to establish by his alibi. It simply indicated that his memory of what occurred at that place at an earlier time was faulty.

## III

Appellants next point out that a witness for the defense, Robert Smith, testified that he lived in an apartment across the street from the P & M Lounge, where the murder was committed. On the night of the offense, he awoke to the sound of a gunshot. He looked out the window and observed a man standing over the body lying in the doorway of the bar. The man said, "I got him. Let's go." Smith testified that this man could not have been Sneed because Sneed stutters and the man he saw was taller than Sneed. In addition, Smith observed the man run away and could tell that he did not have Sneed's running style. Smith had known Sneed for about thirteen years.

Over repeated objection, the State was permitted on cross-examination to question Smith at length about a report he made to the judge at the first trial concerning a juror in that trial discussing the case with someone outside of court. Appellants now contend that it was error to permit the State to pursue an irrelevant and confusing line of inquiry in cross-examining a defense witness on matters unrelated to his testimony.

The judge did not abuse his discretion in overruling the objection. The witness had placed at issue his ability to identify appellant Sneed and the cross-examination was simply designed to attack that ability by exposing a prior misidentification testified to in the prior trial. The judge did not abuse his discretion in permitting that line of questioning.

## IV

Next appellants claim a violation of their right to argue an "unexplained silence" concerning a possible failure of the police to question a prospective witness who had been present at the bar outside of which the murder occurred. They rely upon *Eley v. State,* 288 Md. 548 (1980). Even if we assume error when the trial judge sustained an objection to the querulous comment of the defense counsel,

"I wonder why the great investigatory tools of the Police Department didn't attempt to talk to Pimpy Lee.",

the record reveals that counsel fully developed the failure by the prosecution to investigate Lee as a possible eyewitness. Beyond a reasonable doubt, the error, if any, was clearly harmless. *Dorsey v. State,* 276 Md. 638 (1976).

## V

Appellants next recited eight instances during the State's closing argument wherein they interjected an objection. Five were sustained and three overruled. Except for an allusion to "phony alibis", most of the arguments of which appellants complain concerned the respective roles of two advocates. Such arguments were of questionable relevance and, but for three, were ruled improper argument. The three left standing without sustained objections were: 1) that it was the State's Attorney's job "to find justice", 2) that defense attorneys plant seeds of doubt, and 3) that he (the prosecutor) would not compromise his career just to convict someone. While these also were of questionable relevance they were certainly not beyond the broad scope of permissible argument as set forth in *Wilhelm v. State,* 272 Md. 404, 412-413 (1974).

But appellants' complaint seems directed toward the cumulative effect of all instances cited, whether their objections were sustained or overruled and contends that the

judge abused his discretion by not declaring a mistrial when they moved therefor after the State concluded its remarks. Their brief contends that:

> "It requires no citation of authority to conclude that the prosecutor's closing argument was highly improper. The prosecutor may not assert his personal belief in the guilt of the accused. *Cicero v. State,* 200 Md. 614, 92 A.2d 567 (1952). He certainly may not imply that he is the only party to the proceedings who is interested in justice. He clearly may not assert that the defense is 'phony', thus indicating that perjury has been committed. *Reidy v. State,* 8 Md. App. 169, 259 A.2d 66 (1969)."

*Reidy v. State, supra,* does not support appellants' argument here that it is improper to cast aspersions on, or to suggest disbelief in, an accused's defense. *Reidy* addressed an attack on defense counsel which implied he had committed perjury. A prosecuting attorney is free, however, to comment legitimately and speak fully, although harshly, upon an accused's action and conduct. *Wilhelm, supra.* And while he may not assert his "personal belief or conviction in the guilt of the accused," that admonition, like most clichés, is given too much credence at face value. It is the prefatory clause of a sentence more meaningfully concluded by its exception, but common parlance omits the exception. In *Riggins v. State,* 125 Md. 165, 174 (1915), the Court of Appeals pointed out how foolish it would be to apply the cliché as broadly as appellants would have us do.

> " 'It is of course improper for a prosecuting officer to assert his personal belief or personal conviction as to the guilt of the accused, if that belief or conviction is predicated upon anything other than the evidence in the case. But, upon the other hand, such prosecuting officer has the undisputable right to urge that the evidence convinces his mind of the accused's guilt. Indeed, it would be mere stultification if it were contended that the

prosecuting attorney could argue to the jury that the evidence should convince their minds although it did not convince his. A prosecuting officer therefore has the right to state his views as to what the evidence shows.' "

In *Wilhelm,* the Court pointed out that:

"The conduct of the trial must of necessity rest largely in the control and discretion of the presiding judge and an appellate court should in no case interfere with that judgment unless there has been an *abuse of discretion* by the trial judge of a character likely to have injured the complaining party." *Id.* at 413.

We find no such prejudice and no such abuse.

## VI

Finally, appellants complain that they were denied a speedy trial. They have dissected the relative time spans from arrest to the second trial (13 months for Sneed and 10 months for Williams) and found them of constitutional dimension sufficient to compel a *Barker v. Wingo,* 407 U.S. 514 (1972), analysis which, from their viewpoint, they did by brief and argument. From its viewpoint, the State also analyzed the time span according to the *Barker* formula. The trial judge had done so as well, not only when a motion to dismiss for lack of a speedy trial was heard on December 26, 1979 and January 14, 1980, but when that motion was reviewed at the initial trial in April and again at the second trial on June 2, 1980. Significantly on January 14, 1980, there was an unqualified waiver of appellants' speedy trial and Rule 746 rights taken from that date until the case was to be tried.

We too have applied our own independent review and analysis in accordance with the *Barker* formula, as well as having reviewed appellants' analyses, and that of the State

and trial judge. We have considered all factors as related to each period of time, prewaiver and postwaiver, pretrial one, between trials and all other times until final adjudication. Having considered the facts as applied to the formula, and after considering each of the four factors recommended in the Barker balancing test, we hold that appellants have on balance received speedy justice.

We further hold that Appellant Williams' complaint of noncompliance with Md. Rule 746 a is unjustified. As we have mentioned, the record indicates that the period beyond the 180 day limit of that rule was waived by agreement of counsel. *See State v. Lattisaw,* 48 Md. App. 20, 27-29, *cert. denied,* 290 Md. 717 (1981). *See also, State v. Mines,* 48 Md. App. 30 (1981).

*Judgments affirmed.*
*Costs to be paid by appellants.*