**Arthur SINGLETON, and Arthur Singleton and Muriel Singleton, Husband and Wife, Appellants,**

v.

**INTERNATIONAL HARVESTER COMPANY, Appellee.**

No. 80–1445.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1981.

Decided May 13, 1981.

Pamela A. Bresnahan, Baltimore, Md. (Jerome J. Seidenman, Baltimore, Md., on brief), for Arthur Singleton and Muriel Singleton.

Deborah E. Jennings, Baltimore, Md. (Edward S. Digges, Jr., Robert Dale Klein, Baltimore, Md., on brief), for International Harvester Co.

Before BUTZNER, Circuit Judge, and WILLIAMS, District Judge (Hon. RICHARD L. WILLIAMS, Eastern District of Virginia, sitting by designation).*

RICHARD L. WILLIAMS, District Judge.

On April 27, 1978, while Arthur Singleton was disking a plot of ground, the tractor upon which he rode overturned front to rear. The 1948 International Harvester Farm-all M tractor was built in a triangle configuration, having small front wheels and large rear wheels. As Singleton proceeded through the field at a speed of between one and three miles per hour, the rear wheels of the tractor rolled into an apparently hidden muddy spot and became immobilized. The front end of the tractor then rapidly rose up over the rear and the vehicle turned over. Singleton made an effort to disengage the ignition switch to abort the roll but failed. He lay trapped under the tractor, undiscovered, for several hours. As a result of the accident, Singleton suffered serious personal injuries.

On March 20, 1979, Arthur Singleton and Muriel Singleton, his wife, filed an action against International Harvester Company in the Superior Court of Baltimore, seeking damages for the April 27, 1978 accident. The cause was removed on diversity grounds to the United States District Court for the District of Maryland. Trial was conducted before the district judge and a

---

* With the consent of counsel, this case was heard by two judges because illness prevented the third judge from attending oral argument.

jury from May 13, 1980 until May 27, 1980. The plaintiffs called six witnesses including MacCollum, a safety engineer and Dr. Butler, a mechanical engineer. The defendant rested at the close of the plaintiffs' evidence and called no witnesses.

## I.

The plaintiffs' primary allegation was that International Harvester was strictly liable for its failure to incorporate a Roll-Over Protective Structure (ROPS) on the 1948 tractor. At the close of the evidence, the court directed a verdict for the defendant on the issue of strict liability for the defective design of the tractor without a ROPS. He submitted the case to the jury on the issue of the defendant's strict liability for failure to warn of the tendency of the vehicle to overturn front to rear. The jury returned a verdict for the defendant.

The plaintiffs-appellants urge that the court erred in directing a verdict for the defendant. The appellants also urge that the trial court erred in failing to instruct properly on the role of proximate cause in a failure to warn case. Lastly, the appellants contend the trial court erred in that it did not instruct the jury properly on the elements of strict liability for failure to warn.

As federal jurisdiction in this case arises from diversity of citizenship, the case must be resolved on the basis of the forum state's substantive law. *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1928). The law of Maryland applies regarding the elements of strict liability in a design defect case. The appellants urge that the law of Maryland is unclear, and that the policy of the state of Maryland regarding strict tort liability makes it appropriate for the court to look to the standard laid down by the California courts in *Barker v. Lull Engineering*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443, 445 (1978). The court finds Maryland law to be clear regarding the elements of strict liability, design cases and finds no basis to look to the law of California.

The Maryland Court of Appeals recently adopted strict liability in tort in *Phipps v. General Motors Corp.*, 278 Md. 337, 363 A.2d 955 (1976). *Phipps* was certified to the Maryland court by the United States District Court for the District of Maryland sitting in Baltimore. *Phipps* involved an injury incurred as a result of an automobile accelerator sticking, the driver losing control and then colliding with a tree. In adopting strict liability as the law of Maryland, the Maryland court specifically adopted the elements set out in *Restatement (Second) of Torts*, § 402A (1965).[1]

While the Maryland court recognized that in a strict liability action the relevant inquiry "focuses not on the conduct of the manufacturer but rather on the product itself," it noted a distinction between defective manufacturing and defective design cases. *Id.* 363 A.2d at 958. The court noted that it is a simpler matter to apply § 402A in manufacturing defect cases than in design defect cases. The difficulty is that

... in a design defect case the standard of defectiveness under § 402A, involving as it does the element of unreasonable danger, still requires the weighing of the utility of risk inherent in the design against the magnitude of the risks.

*Id.* at 959. The court noted that there are situations in which regardless of whether

---

1. Section 402A provides:

"Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

*Phipps, supra*, 363 A.2d at 957.

the risk results from a design defect or a manufacturing error, the risk is inherently unreasonable. Inherently unreasonable risks noted by the *Phipps* court included the cases of the steering mechanism of a new automobile which would cause the car to swerve off the road, the drive shaft of a new automobile which separates from a vehicle driven in its normal manner and the brakes of a new automobile which suddenly fail. The court characterized the situation found in *Phipps*, where the accelerator of a new automobile suddenly sticks without warning, as an inherently unreasonable risk. In such situations, the court held it is not necessary to weigh the risk against the utility of the product.

The *Phipps* court noted and reaffirmed the earlier Maryland decision of *Volkswagen of America v. Young*, 272 Md. 201, 321 A.2d 737 (1974). *Volkswagen* is a design defect case which does not involve an inherently unreasonable risk. In *Volkswagen* the driver was killed when the seat in which he was sitting separated from the floor upon impact, causing him to fly into the rear portion of the car. Regarding these facts, the *Phipps* court noted:

> in some circumstances the question of whether a particular design is defective may depend upon a balancing of the utility of the design and other factors against the magnitude of the risk.

The court went on to note that in a design defect case like *Volkswagen*, the question turned "upon the degree of care exercised by the manufacturer in view of the type, style, purpose and cost of the vehicle." *Id.* 363 A.2d at 961.

■ Thus, in Maryland design cases not included in the limited category of inherently unreasonable risks, strict liability, in the usual sense, does not apply. In manufacturing defect cases, the plaintiff proves that the product is defective by simply showing that it does not conform to the manufacturer's specifications. In a design defect case the issue is whether a manufacturer, knowing the risks inherent in his product, acted reasonably in putting it on the market. The *Phipps* court approved

Professor Wade's analysis regarding defective design. The court must balance

■ the usefulness and desirability of the product, (2) the availability of other and safer products to meet the same need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the danger, (5) common knowledge and normal public expectation of the danger (particularly for established products), (6) the avoidability of injury by care in use of the product and (7) the ability to eliminate danger without seriously impairing the usefulness of the product. *Phipps*, 278 Md. at 345, n.4, 363 A.2d 959, n.4.

■ The failure of the defendant to incorporate a ROPS on the 1948 tractor is not an inherently unreasonable risk. Thus, the plaintiffs could create a jury issue on liability for defective design by producing evidence upon which a jury could determine the manufacturer's reasonableness in marketing a tractor without a ROPS in 1948. Such evidence should encompass matters such as the technological feasibility of manufacturing a tractor with a ROPS in 1948, the availability of material for producing such a structure in 1948, the cost of producing such a structure in 1948, the price to a consumer of a ROPS in 1948, and the chances for consumer acceptance of a tractor with a ROPS in 1948.

■ An examination of the record convinces the court that the appellants did not produce evidence upon which a jury could find that a safer tractor design was available and would be accepted in 1948. Instead, their experts MacCollum and Butler made suggestions that perhaps such a tractor could have been developed in 1948 by someone qualified in tractor design and manufacturing.

MacCollum had no training in engineering, in farming, in metallurgy, or in agricultural engineering. He proposed the idea of a canopy over the tractor, but had no suggestions as to how the canopy could be attached to the 1948 tractor, as to what kind of material it could have been made of in 1948, or as to how it could be fitted to the machine without interfering with its normal functions.

Dr. Butler likewise was not an agricultural engineer and knew little about the agricultural industry or needs of a farming community during 1948. He proposed attaching a steel roll-over frame to the machine but he had conducted no studies to determine if such a frame would support the tractor during a roll. Dr. Butler did not know whether his concept of a two-post steel frame could be put into a specification for a tractor. He stated that he did not know if his concept would work in an accident situation. He had performed no actual tests on the frame. He had no idea how his contraption would work on the 1948 tractor in connection with the use of various farm implements which are customarily used with the tractor. He merely assumed that the axle of the 1948 tractor would bear the load but admitted conducting no analysis of its strength.

Likewise, there was no testimony as to the uses to which a tractor was put in 1948. There was no evidence of the availability of materials in 1948 for producing a ROPS. There was no evidence that affixing a ROPS to a tractor was technologically feasible in 1948. There was no evidence regarding manufacturing facilities in 1948. There is no evidence of the cost of producing a ROPS in 1948 nor of the price which a consumer would have to pay.

Regarding industry practice in 1948, MacCollum testified that no tractor was manufactured with a ROPS at that time and that ROPS were not marketed until the late 1950's. Butler testified tractors did not utilize a ROPS until 1965.

Thus, as there was not sufficient evidence for a jury to make a determination regarding International Harvester's reasonableness in marketing the Farm-all M tractor in 1948 without a ROPS, the district court properly directed a verdict for the defendant.

## II.

■ The appellants also contend that the court failed to instruct the jury on the element of proximate cause in a failure to warn context. The controverted instruction is as follows:

... that the failure to give adequate warning was, A [sic] proximate cause of the incident on April 27, 1978, in which Mr. Singleton was injured.

\* \* \* \* \* \*

One of the elements above which I have not yet mentioned in detail is that of proximate cause. The lack of adequate warning, if such you find, must be shown by a preponderance of the evidence to be a proximate cause of the accident. Injury or damages constantly caused by an act or failure to act whenever it appears from the evidence in the case that the act or admission played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result of a reasonable probable consequence of that act or admission. That does not mean that the law recognizes only one proximate cause of an injury or damage consisting of only one factor or thing, or the conduct of only one person.

On the contrary, many factors or things or the conduct of two or more individuals may operate at the same time, either independently or together, to cause such injury or damage, and in such case, each may be a proximate cause of the injury or damage.

If you find that there was adequate warning given, but that under the circumstances the accident would have occurred even if an adequate warning had been given, then the manufacturer is not liable because the absence of a warning would not have been a proximate cause of the accident.

The appellants here contend that the court's instruction required that the warning be such that the plaintiff could have avoided the accident. Appellants assert that this requires them to prove something which is incapable of proof; that is, that Singleton would have read a nonexistent warning.

We cannot agree with the appellants' logic. The jury is specifically instructed to

assume an adequate warning was given. The record discloses that Mr. Singleton believed that he was disking ground which was "fairly level" and which appeared to be "dry." The accident occurred rapidly, the tractor beginning to flip the instant it dropped into the mud hole. Singleton testified that had he known the area where the rear wheels fell was muddy, he would have avoided the area. On these facts, a reasonable jury, following the court's instruction could have found that Singleton, having read a fully adequate warning, still would have experienced the unfortunate accident. We find no merit to appellants' assertion of error in the court's instruction on proximate cause.

### III.

Lastly, the appellants contend that the trial court erred in refusing to submit the failure to warn count to the jury for consideration on both a negligence and a strict liability standard. The appellants argue that had the court submitted the case to the jury on a negligence standard, the jury would have focused on the reasonableness of the manufacturer's action rather than the defective condition of the product. This change in focus, they argue, somehow would have been beneficial to their case.

We find no merit in appellants' third contention. The sole difference between liability for negligence and strict tort liability is that the plaintiff in proving negligence must prove not only that there was a failure to warn that the product was unreasonably dangerous but also that the failure to warn was the result of the defendant's failure to exercise due care. We agree with the observation made in the trial court's letter of May 2, 1980 to counsel which stated that if the plaintiffs were unable to convince the jury on strict liability they will necessarily be unable to convince them on the more demanding negligence standard. In this case, like in *Chestnut v. Ford Motor Co.*, 445 F.2d 967 (4th Cir. 1971), the strict liability and the negligence instruction are functional equivalents and the failure to give the more demanding negligence instruction is not error.

Judgment of the district court is affirmed.

AFFIRMED.