**Christopher J. REED, John Christopher Reed, Dorothy Reed, Appellants,**

v.

**TIFFIN MOTOR HOMES, INC., Appellee.**

**No. 81–2099.**

United States Court of Appeals, Fourth Circuit.

Argued Sept. 13, 1982.

Decided Dec. 30, 1982.

---

John U. Bell, III, Columbia, S.C. (Nelson, Mullins, Grier & Scarborough, Columbia, S.C., on brief), for appellants.

Robert A. Patterson, Charleston, S.C. (Thomas J. Wills, IV, M. Dawes Cooke, Jr., Barnwell, Whaley, Stevenson & Patterson, Charleston, S.C., on brief), for appellee.

Before HAYNSWORTH, Senior Circuit Judge, and SPROUSE and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

This appeal is from a jury verdict against appellants Christopher J. Reed, John Christopher Reed and Dorothy Reed. Their three cases were consolidated and tried in the District Court for the District of South Carolina solely upon the theory of strict liability in tort. The jury returned a verdict for the appellee Tiffin Motor Homes, Inc. The court denied appellants' Motion for New Trial.

Appellants seek reversal of the judgment below on the grounds that: (1) the district court erred by admitting evidence regarding state of the art into a case sounding solely in strict tort liability; (2) the court's instruction to the jury was in error because it allowed the jury to consider state of the art and industry standards when deciding if the product was defective and unreasonably dangerous; (3) it was an abuse of discretion for the judge to admit into evidence photographs offered by the defendant and also to refuse to admit a photograph offered by plaintiffs; and (4) the district court was in error when it refused to allow cross examination of an expert witness as to the contents of a police accident report. For the reasons stated below, we affirm the district court.

## I

In August of 1977, Christopher J. Reed leased from Ft. Myers Motor Homes one 1977 Allegro Motor Home which was designed, manufactured and assembled by Tiffin Motor Homes, Inc. (herein Tiffin), an Alabama corporation. The purpose for leasing the motor home was to allow Mr. Reed, his wife Dorothy, and son John Christopher, to travel round-trip from their home in Ft. Myers, Florida to West Virginia and Connecticut. On August 20, 1977, while returning to their home in Florida, the motor home in which they were traveling was struck in the rear by a Lincoln Continental. This collision occurred on interstate 95 near St. George, South Carolina. Upon impact the motor home was damaged and burst into flames. As a result of this accident, the appellants suffered personal injuries.

The appellants brought suit in the Charleston division of the District Court of South Carolina on June 6, 1979. The three complaints were each based upon three theories—negligent design and manufacture, breach of implied warranties and strict liability—and each sought actual and punitive damages.[1] The cases were tried solely upon the theory of strict liability. Appellee's motion to strike punitive damages was denied.

During the trial, appellants offered certain evidence [2] in an attempt to prove that the motor home was designed and manufactured with a defective and unreasonably dangerous fuel system. The appellants maintain they offered this evidence for the limited purposes of: qualifying an expert witness; showing the feasibility of alternate locations of the auxiliary tank; discrediting one of the defendant's expert witnesses; and establishing grounds for punitive damages. The appellee offered evidence consisting of testimony and brochures to show the state of the art, custom and industry standards concerning the location of the auxiliary gas tank. The purpose for offering this evidence was to show that the design was not defective or unreasonably dangerous, that it met reasonable consumer expectation and that the defendant exercised due care in selecting the location. The appellants made proper objection.

## II

As this is a diversity case, the law of the state in which the tort occurred must be applied by the federal court. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1928). The primary issue is whether it is proper to admit into evidence, and then to charge the jury on, the state of the art as a defense in a strict liability case. It is important to note at the outset that this is a defect in design case, not defect in manufacturing.[3] Because the South Carolina Supreme Court has not passed on this issue, we must predict how it would decide the issue.

South Carolina adopted the law of strict liability in tort by enacting § 402A of the Restatement (Second) of Torts (1965). S.C.Code Ann. § 15–73–10 (1976).[4] Under

---

1. It is undecided in South Carolina whether punitive damages are recoverable in an action sounding only in strict liability. Because that issue is not before this court, the opinion in no way intimates how we think the State Supreme Court will decide the issue. It is worth noting, however, there is a split in authority on the issue. *See, e.g., J. Beasley, Products Liability and the Unreasonably Dangerous Requirement,* at 651–670 (1981) and Annot., 13 A.L.R. 4th 52 (1982).

2. The Reeds, through the testimony of their experts, offered evidence of the industry standards and state of the art concerning fuel systems and the placement of fuel tanks in motor homes. Essentially, this testimony compared different designs used and assessments of the fire hazards involved with the placement of the

tanks in each design. Their experts testified that as early as 1973 it had been published and was known that placement between the frame rails provided the maximum protection. This evidence also showed the defendant did not place its auxiliary tank between the rails. Moreover, the jury could infer Tiffin had not followed industry standards and the state of the art designs; therefore, it had designed a defective and unreasonably dangerous product.

3. *See, Singleton v. International Harvester Co.,* 685 F.2d 112 (4th Cir.1981).

4. § 15–73–10. Liability of seller for defective product.
   (1) One who sells any product in a defective condition unreasonably dangerous to the user

the theory of strict liability, the exercise of due care by the defendant will not relieve him of liability.[5] *See, e.g., Werner v. Upjohn Co., Inc.,* 628 F.2d 848, 857 (4th Cir. 1980). Thus, the plaintiff need not prove that the defendant was negligent, only that the product was defective and unreasonably dangerous when it was placed in the stream of commerce. *See, e.g., Welch v. Outboard Marine Corp.,* 481 F.2d 252 (5th Cir.1973). Because the plaintiff need not show negligence, the focus of the trier of fact is upon the product itself, not the conduct of the manufacturer. *Singleton v. International Harvester Co.,* 685 F.2d 112, 114 (4th Cir. 1981). This is because:

> public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum protection at the hands of someone, and the proper persons to afford it are those who market the products.

Restatement (Second) § 402A, Comment c, incorporated by reference into the South Carolina Code of Laws. S.C.Code Ann. § 15–73–30 (1976).

■ In manufacturing defect cases courts have excluded evidence of the state of the art because the plaintiff need only show the product does not conform to the manufacturer's specifications to prove it is defective. *Singleton,* 685 F.2d at 115. When the issue is a defect in design, however, the jurisdictions are divided upon the issue of whether state of the art evidence is admissible. *See, J. Beasley, Products Liability and the Unreasonably Dangerous,* 393–410 (1981). Because the majority rule

is that state of the art evidence is admissible in design defect cases, *Singleton,* 685 F.2d at 114–115; *Bruce v. Martin-Marietta Corp.,* 544 F.2d 442 (10th Cir.1976); *Raney v. Honeywell, Inc.,* 540 F.2d 932 (8th Cir. 1976); *Hoppe v. Midwest Conveyor Co., Inc.,* 485 F.2d 1196 (8th Cir.1973); *Welch,* 481 F.2d at 256–257; *see also, J. Beasley* at 406–407, and because the South Carolina Supreme Court has adopted a balancing test for use in design defect cases when determining if a product is unreasonably dangerous, *Claytor v. General Motors Corp.,* S.C., 286 S.E.2d 129, 132 (1982), we hold that South Carolina would admit testimony on state of the art in design defect cases tried under the theory of strict liability.

■ Section 402A and the South Carolina courts require the plaintiff to show both that the product is defective and that it is "unreasonably dangerous to the consumer or user given the conditions and circumstances that foreseeably attend use of the product." *Claytor,* S.Ct., 286 S.E.2d at 131. The majority of courts have found in design defect cases, as opposed to manufacturing defect cases, that state of the art and industry standards are relevant to show both the reasonableness of the design, *Raney,* 540 F.2d at 937; *Hoppe,* 485 F.2d at 1202; *Welch,* 481 F.2d at 256, and that the product was dangerous beyond the expectations of the ordinary consumer. *Bruce,* 544 F.2d at 447. This is because "in a design defect case the standard of defectiveness under § 402A, involving as it does the element of unreasonable danger, still requires the weighing of the utility of risks inherent in the design against the magnitude of the risk." *Singleton,* 685 F.2d at 115. In design cases, South Carolina has held that while any product can be made more safe, the fact, that it is not, does not automatical-

---

or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property, if

(a) The seller is engaged in the business of selling such a product, and

(b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) shall apply although

(a) The seller has exercised all possible care in the preparation and sale of his product, and

(b) The user or consumer has not bought the product from or entered into any contractual relation with the seller.

**5.** S.C.Code Ann. § 15–73–10(2)(a) (1976).

ly make the product unreasonably dangerous. Rather, "[i]n the final analysis, we have another of the law's balancing acts and numerous factors must be considered, including the usefulness and desirability of the product, the cost involved for added safety, the likelihood and potential seriousness of injury, and the obviousness of danger." *Claytor,* S.C., 286 S.E.2d at 132 (holding evidence insufficient for strict tort liability, therefore it follows implied warranty and negligence actions must fail).

This balancing approach finds it's roots in Comment i to § 402A [6] where it is stated that "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common of the community as to its characteristics." [7] Therefore, the comment does require a determination of what consumers expect when they purchase a particular product.

We find that the state of the art and trade customs are relevant in helping the jury make a determination of whether the product is unreasonably dangerous when used in a manner expected by the ordinary consumer in the community. While only one element in that determination, it is a necessary aid to assist the trier of fact in determining the reasonableness of the manufacturers' design. Further, the South Carolina court has explicitly set forth the requirement that a product must be unreasonably dangerous to a consumer with the ordinary knowledge of the community and has held products not to be unreasonably dangerous if the design failed to provide a safety feature outside what that consumer might expect. *Young v. Tidecraft, Inc.,* 270 S.C. 453, 471, 242 S.E.2d 671, 679–80 (1978).

Moreover, it is clear that South Carolina does balance the utility of the risk inherent in the design of the product with the magnitude of the risk, *Claytor,* S.C., 286 S.E.2d at 132, to determine the reasonableness of the manufacturers' actions in designing the product. This "balancing act" necessarily is relevant to the determination that the product, as designed, is unreasonably dangerous in its failure to conform to the ordinary consumer's expectations. *Young,* 270 S.C. at 471, 242 S.E.2d at 680.

In this light, we are compelled to hold that South Carolina would find that a design defect case is an exception to the usual strict liability manufacturing case; therefore, the admission of state of the art evidence, while only a factor to consider, is both necessary and probative on the issue of "unreasonably dangerous."

The appellants present the argument that state of the art evidence is not relevant in strict liability cases and urge that South Carolina should and would adopt the Pennsylvania and Illinois rule that such evidence has no place in a strict liability case, whether it is a manufacturing or design defect case. *Holloway v. J.B. Systems, Ltd.,* 609 F.2d 1069 (3rd Cir.1979); *Walker v. Trico Manufacturing Co., Inc.,* 487 F.2d 595 (7th Cir.1973). Because Pennsylvania and Illinois state law is substantively different from that of South Carolina, these cases are easily distinguishable. *See, J. Beasley,* 117– 124, 183–185.

In Pennsylvania, it is error to use even the term "unreasonably dangerous" while instructing the jury in a design defect case. *Azzarello v. Black Brothers Co., Inc.,* 480 Pa. 547, 391 A.2d 1020, 1027 (1978). And, unlike South Carolina, *Claytor,* S.C., 286 S.E.2d at 132, Pennsylvania has made the manufacturer a guarantor of his products' safety. *Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 32, 319 A.2d 903, 907 (1974). By eliminating proof and consideration of the "unreasonably dangerous" element and by requiring the manufacturer to

---

**6.** Incorporated by reference in S.C.Code Ann. § 15–73–30 (1976).

**7.** While the practice of considering the ordinary consumer's expectation has been met with criticism from both Wade and Keeton, it is the law

in South Carolina. *See, J. Beasley,* 85–89. Wade advocated a balancing approach for all products liability, but particularly in the area of design defect. *Id See,* Wade, *Strict Tort Liability of Manufacturers,* 19 *Sw.L.J.* 5 (1965).

provide with the product every element necessary to make a product safe for its use, the Pennsylvania courts have extended strict liability to a frontier not yet approached by South Carolina.

In Illinois, the courts of appeals have held that state of the art evidence is inadmissible in design defect cases. *See, e.g., Stanfield v. Medalist Industries, Inc.,* 34 Ill. App.3d 635, 340 N.E.2d 276 (1975); *J. Beasley* at 183–185. This is in direct contrast to South Carolina where the trier of fact is required to balance several factors when determining the liability in a design defect case. *Claytor,* S.C., 286 S.E.2d at 132. Therefore, in the *Walker* case the Seventh Circuit was assisted in its decision by state case law contra to the law we must apply here.

Because of the distinguishing features of Pennsylvania and Illinois law, we are convinced South Carolina would follow the majority rule. This is not an easy conclusion to reach, since the law of strict tort liability and state of the art evidence is mired in much confusion and controversy;[8] however, in light of *Claytor* and *Young,* we feel it is a proper application of both South Carolina law and the majority rule to allow the trier of fact to consider state of the art evidence when determining liability in a design defect case.

Also, there is another reason to consider such evidence in this case. The appellants were seeking to recover punitive damages in a strict tort liability action.[9] In South Carolina punitive damages are allowed when a plaintiff "proves the wanton,

willful, or malicious violation of his rights." *Gilbert v. Duke Power Company,* 255 S.C. 495, 500, 179 S.E.2d 720, 723 (1971). Clearly, whether or not Tiffin followed industry standards and complied with the state of the art while designing the motor home is probative on the issue of the wantonness, willfulness and maliciousness of their acts, including the placement of the auxiliary gas tank. It must be remembered that plaintiffs resisted defendant's effort to have punitive damages stricken from the case.

### III

The appellants have also argued that the trial judge committed error by charging the jury on compliance or noncompliance with industry standards. During his instructions, the judge told the jury they could consider such compliance or noncompliance as one factor when determining whether or not the motor home was defective and unreasonably dangerous. The court did not require the jury to consider this evidence, rather charged that it could be used as one factor in their deliberations. Further, the court instructed the jury that if it found the motor home as designed to be defective and unreasonably dangerous, the manufacturer was liable no matter how careful he was during the manufacturing process. Because of our holding above that state of the art evidence is properly admissible to assist the trier of fact in determining whether or not a product is unreasonably dangerous, we find that the jury charge was a correct statement of the law. The charge to the jury must, when "taken as a whole, fairly present the case to the jury

---

**8.** The most obvious criticism of this rule is that it allows concepts of negligence to reenter a strict liability action through the back door. This would be improper in light of the fact the Section 402A explicitly states that liability arises despite the fact a manufacturer has used all possible care in the preparation and sale of his product. The fact remains, however, that design and manufacturing cases are different. If the manufacturer fails to follow his own specification, he is liable despite the state of the art. That is a much simpler case. Finding a design defective and unreasonably dangerous is more difficult. The trier of fact must have some guidance in deciding whether a product

design is unreasonably dangerous. Moreover, the majority of courts allow the evidence to help determine consumer expectation and the reasonableness of the design. Once allowed in, the evidence is only an element in the determination of the dangerous characteristic of the defect; it is not conclusive. For a thorough discussion of this issue see, *J. Beasley* at 393 to 410.

**9.** In footnote 1 we noted that this case would not decide whether punitive damages are recoverable in a strict liability action tried under South Carolina law.

. . . ." *New Amsterdam Cas. Co. v. Novick Transfer Co., Inc.,* 274 F.2d 916, 925 (4th Cir.1960). This charge did fairly present the case to the jury; therefore, it was not in error.

## IV

The appellants have presented two other exceptions. The first of these is the admissibility into evidence of certain photographs.

At trial, Tiffin presented into evidence photographs of certain vehicles that had been crash tested at 35 m.p.h. in a controlled barrier test. These photographs were introduced for the purpose of (1) comparison of the deformation of similar vehicles to the Lincoln involved in the accident; and (2) because the deformation existent at the speeds of the test was used in a mathematical calculation under accepted reconstruction techniques to estimate the closing speed of the car involved in the accident. Objection to the admission of these photographs was overruled.

Appellants offered a photograph of a Lincoln similar in size, weight, type and amount of damage to the one involved in the accident. The purpose was to show that the damage sustained by the automobile in the accident could have been the result of a low speed impact. The court sustained Tiffin's objection to the admission of this photograph.

On the issue of the court allowing the appellee's photographs into evidence the appellants argued that the vehicles and the type of collisions involved were substantially different from the vehicle and collision in question here. Therefore, they submit that the admission of these photographs into evidence was more prejudicial than probative. In regard to their own photograph they argue that the automobiles involved were similar in size, weight and the damage sustained. Further, they maintain their expert used this photograph as part of the basis in forming his opinion. To exclude this photograph, they submit, was also prejudicial to their case.

Tiffin laid the proper foundation for admission of its photographs into evidence. Any difference in the testing and the collision in question goes to the weight of the evidence and not its admissibility. *Renfro Hosiery Mills Co. v. National Cash Register Company,* 552 F.2d 1061 (4th Cir.1977). It is also clear that admissibility of photographs is a matter resting in the sound discretion of the trial judge; his decision will not be reversed without a showing that he abused his discretion. *Virginia Ry. Co. v. Armentrout,* 166 F.2d 400 (4th Cir.1948); *Ramseyer v. General Motors Corp.,* 417 F.2d 859 (8th Cir.1969). The trial judge heard all of the testimony, knew the circumstances under which the photographs were offered and had the opportunity of viewing the photographs when they were submitted. There was no abuse of his discretion in either ruling.

## V

The final exception is that the lower court refused to allow the appellee's expert to be cross examined about the speeds of the vehicles as recorded in the accident report by the investigating highway patrolman. The contention is that this was error because Tiffin pled the intervening negligence of the Lincoln's driver as a primary defense and that their expert used the speed listed in the report as one factor for the basis of his expert opinion. Because the expert relied upon this report to form his opinion, they submit that cross examination was proper to explain to the jury the information he used. Exclusion of this evidence, they argue, was prejudicial.

Tiffin's expert testified he used the report only to locate the scene of the accident, to find the physical evidence for a scene inspection and to determine the year of the car (which he later verified through other means). Appellants' attorney then asked the expert if he discounted the speed as stated in the report. The court properly sustained an objection to this testimony because the expert had testified he did not use the report to calculate speed at which the vehicles were traveling. Once he made

clear that he had made no such use of this report, there was no reason to pursue the matter further.

By statute South Carolina excludes from evidence in an action at law for damages any police accident report required to be filed by certain statutes. S.C.Code Ann. § 56–5–1290 (1976). The report in question is just such a report. While this statute is not binding upon a federal court, we note the statute and its spirit as a buttress to our conclusion that the trial judge was correct to exclude this hearsay from evidence. The appellants wanted to get the patrolman's report of speed into evidence; this is not admissible under the South Carolina statute and is simply hearsay. The trial court was correct in excluding this testimony from evidence.

The judgment of the district court is affirmed.

AFFIRMED.