850 F.2d 689
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Laverne GREENE and George Greene, Individually and as
husband and wife, Plaintiffs-Appellees,
v.
M & M PRODUCTS COMPANY, Defendant-Appellant,
A-Special Touch, Inc., Defendant.
Laverne GREENE and George Greene, Individually and as
husband and wife, Plaintiffs-Appellants,
v.
M & M PRODUCTS, CO., Defendant-Appellee,
A-Special Touch, Inc., Defendant.
 Nos. 87-3720, 87-3725.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 2, 1988.
Decided: July 1, 1988.
 
 1
 C. Christopher Brown and Daniel F. Goldstein, Brown & Goldstein and Ronald A. Karp, Chaikin & Karp, for appellees.
 
 
 2
 William O. Lockwood, for appellant.
 
 
 3
 Before HARRISON L. WINTER, Chief Circuit Judge, MURNAGHAN, Circuit Judge, and NORMAN P. RAMSEY, United States District Judge for the District of Maryland, sitting by designation.
 
 
 4
 NORMAN P. RAMSEY, District Judge, sitting by designation.
 
 
 5
 Laverne Greene was severely burned, leaving her with scars and other injuries. At the time she was wearing her hair in a "jeri curl" style. On the evening of December 21, 1985, she applied appellant M & M Products Company's "Sofn' Free Curl Moisturizing Spray" and "Respond Curl Activator" to her hair. She covered her head with a cap and slept with it on overnight. The next morning, December 22, she was driving alone in a car. While stopped at a red light, in Maryland, she struck a match to light a cigarette. A spark flew into her hair and it started burning in the front. She tried to pat the fire out but it spread over the top of her head and down the back, "popping and cracking." She jumped from her car and two men who saw her distress managed to put out the flames. Afterwards she was hospitalized for four weeks.
 
 
 6
 Mrs. Greene and her husband brought a products liability action against M & M Products Company, which manufactured the products she had used. The case was tried before a jury in the United States District Court for the District of Maryland. The jury returned a verdict for the plaintiffs and awarded damages of Four Hundred Fifty Thousand Dollars ($450,000.00).
 
 
 7
 M & M Products now appeals that verdict. Appellant raises five issues on appeal. Three of these question the sufficiency of the evidence to support a finding of liability in a products liability suit. One challenges an evidentiary ruling of the district court judge. And one questions the manner in which the jury was instructed. Because we find there is sufficient evidence in the record to support the verdict and are satisfied that no prejudicial error occurred in the rulings of the court, we affirm the verdict of the district Court.
 
 
 8
 * Appellant M & M Products makes three arguments concerning the sufficiency of the evidence presented at trial. First, it questions whether a prima facie case for negligence was made out. Second, it argues that neither breach of warranty nor strict products liability were proven. Finally, it contends that Mrs. Greene failed to present competent evidence to establish the extent, if any, that her injuries were enhanced by M & M's products.
 
 
 9
 The basis for a products liability suit is well established under Maryland law. A plaintiff may proceed on a negligence theory, a breach of warranty theory, a strict products liability theory, or any combination of the three. Whatever the theory, a plaintiff must satisfy three basics from an evidentiary standpoint. A plaintiff must show 1) the existence of a defect; 2) the attribution of the defect to the seller; and 3) a causal relation between the defect and the injury. Jensen v. American Motors, 50 Md.App. 266, 234, 437 A.2d 242, 247 (1981).
 
 
 10
 The case was presented to the jury under all three theories. And the district court judge instructed the jury that if it found for the plaintiff on any one of the theories it should not consider the others but instead should determine the damages to be awarded. Mrs. Greene presented expert testimony directly bearing on two of the theories. For her negligent duty to warn theory, she presented a human factors psychologist who testified regarding the design of a proper warning and why M & M had failed to adequately warn users of its products of possible dangers. For the "unreasonably dangerous" element of her strict products liability theory, she presented Richard Custer, a professor of fire protection engineering. Professor Custer testified that untreated hair self-extinguished after being ignited, being unlikely to continue burning on its own, with only slight charring resulting. However, hair treated with M & M's products burned with a high flame and continued burning until all the hair was consumed. The expert testimony, combined with Mrs. Greene's own testimony as to how the accident occurred, provided sufficient evidence to support a jury finding either in negligence or in strict products liability.
 
 
 11
 The argument M & M makes on these points misconstrues the plaintiffs' case. Appellant notes that hair treated with its product requires a temperature ten degrees higher than untreated hair in order to ignite; and that its product cannot be considered combustible, flammable, or extremely flammable, as those terms are defined under federal standards. Based on these facts, M & M asserts its product is not defective, and characterizes Mrs. Greene's case as being founded on an assertion that when applied to hair, M & M's products merely provide another fuel to burn along with the hair. Thus, appellant asserts, the only possible view of the case is that it is an "enhanced injury" situation.
 
 
 12
 M & M's argument, however, does not meet the thrust of Mrs. Greene's evidence, which was that hair treated with the products is more difficult to extinguish than untreated hair. Because the jury verdict is supportable upon either a negligence or strict products liability theory, it is not necessary to consider appellant's contention that Mrs. Greene needed to but did not prove the degree to which her injuries were enhanced.
 
 II
 
 13
 There is no merit in appellant's argument that it was prejudiced by the trial court having allowed a doctor to testify in response to leading questions over the objections of counsel. The admission of evidence is a matter committed to the sound discretion of the trial judge. Reed v. Tiffin Motor Homes, Inc., 697 F.2d 1192, 1199 (4th Cir.1982). Even if the evidentiary rulings were erroneous, the jury's verdict will not be set aside unless a substantial injustice would result. Fed.R.Civ.P. 61; see Padgett v. General Motors Corp., 544 F.2d 704, 705 (4th Cir.1976). A trial court has a nearly non-reviewable ability to regulate leading questions, and only rarely will an error create prejudice of a sort reviewable on appeal. See Northern Pacific Railroad Co. v. Urlin, 158 U.S. 271, 273 (1895). Having reviewed the record, we are unable to say that the leading questions allowed below constitute an abuse of discretion.
 
 III
 
 14
 Finally, M & M contends that the jury was insufficiently instructed regarding "enhanced injury responsibility." Appellant alleges error in that the trial court failed to present its proffered instruction on the issue in its totality. However, as noted above, the thrust of Mrs. Greene's case was other than to make it an enhanced injury situation. Failure to instruct on the issue, therefore, cannot be prejudicial error. The instructions given, taken as a whole, "fairly and adequately state the pertinent legal principles involved" in the case, and do not warrant reversing the jury's verdict. Chavis v. Finnilines Ltd. O/Y, 576 F.2d 1072, 1076 (4th Cir.1978).
 
 
 15
 For the foregoing reasons, the judgment of the District Court is
 
 
 16
 AFFIRMED.
 
 MURNAGHAN, Circuit Judge, concurring:
 
 17
 Albeit without enthusiasm, I agree that the judgment should be affirmed. The jury was presented with a myriad of tort theories, without any requirement that it specify the basis chosen for any eventual award. Therefore, if there was sufficient evidence to allow any theory to reach the jury, we are constrained to affirm the jury's considered judgment. While I believe that a directed verdict should have been entered for the defendant on the claim for strict liability as well as breach of warranty, I agree with the majority that the evidence supporting the claim of negligent failure to warn, while weak, was adequate to submit the claim to the jury. As for the other issues raised on appeal, involving questioning of witnesses and jury instructions, I concur in Parts II and III of the majority opinion.
 
 I.
 
 18
 The plaintiff's claim for strict liability should not have been submitted to the jury. Maryland has adopted strict liability in tort, and has specifically adopted the elements set out in Sec. 402A of the Restatement (Second) of Torts. Phipps v. General Motors Corp., 278 Md. 337, 363 A.2d 955 (1976). Section 402A provides that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property," if the seller is engaged in the business of selling such products and the product reaches the user or consumer without substantial change. Id. at 341, 363 A.2d at 957. The liability applies even though the seller has exercised all possible care in the preparation and sale of the product. Id.
 
 
 19
 The two basic types of strict liability cases are defective manufacture and defective design cases. The plaintiff did not present evidence sufficient to reach the jury on either type. There was no evidence that the curling product used by Greene failed to conform to the manufacturer's specifications. As for design defect, in Maryland the test is "whether a manufacturer, knowing the risks inherent in his product, acted reasonably in putting it on the market." Singleton v. International Harvester Co., 685 F.2d 112, 115 (4th Cir.1981). The Maryland Court of Appeals in Phipps adopted the classic analysis regarding defective design. The court must balance
 
 
 20
 (1) the usefulness and desirability of the product, (2) the availability of other and safer products to meet the same need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the danger, (5) common knowledge and normal public expectation of the danger (particularly for established products), (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.
 
 
 21
 Phipps, 278 Md. at 345 n. 4, 363 A.2d at 959 n. 4. Greene failed to create a jury issue on liability for defective design because she failed to provide evidence upon which the jury could determine the manufacturer's reasonableness in marketing its curling product as formulated. See Singleton, 685 F.2d at 115. Greene presented expert testimony showing that the product was dangerous, but she presented no evidence about other curling products on the market and their relative safety features. She also presented no evidence that there was an alternative formulation that would eliminate the danger of enhanced injury from fire without seriously impairing the usefulness of the product. Therefore, a directed verdict should have been granted the defendant on the strict liability claim.
 
 II.
 
 22
 While the evidence supporting the claim of negligent failure to warn is thin, I am constrained to agree that under state law, which here controls under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), the evidence was adequate to send the claim to the jury. In Maryland,
 
 
 23
 a duty to warn is imposed on a manufacturer if the item it produces has an inherent and hidden danger about which the producer knows, or should know, could be a substantial factor in bringing injury to an individual or his property when the manufacturer's product comes near to or in contact with the elements which are present normally in the environment where the product can reasonably be expected to be brought or used.
 
 
 24
 Moran v. Faberge, Inc., 273 Md. 538, 552, 332 A.2d 11, 20 (1975) (citing Spruill v. Boyle-Midway, Inc., 308 F.2d 79, 83-84 (4th Cir.1962)). In Moran, the Maryland Court of Appeals stated,
 
 
 25
 in the context of this case, it was not necessary for a cologne manufacturer to foresee that someone would be hurt when a friend poured its product near the flame of a lit candle; it was only necessary that it be foreseeable to the producer that its product, while in its normal environment, may be brought near a catalyst, likely to be found in that environment, which can untie the chattel's inherent danger. For example while seated at a dressing table, a woman might strike a match to light a cigarette close enough to the top of the open cologne bottle so as to cause an explosion.... So, in the words of the Supreme Court of Missouri: "If there is some probability of harm sufficiently serious that ordinary men would take precautions to avoid it, then failure so to do is negligence."
 
 
 26
 Moran, 273 Md. at 553, 332 A.2d at 20 (quoting Bean v. Ross Manufacturing Co., 344 S.W.2d 18, 25 (Mo.1961)).
 
 
 27
 The plaintiff presented evidence that the product was dangerous, because greater injury could occur when treated hair burned than would occur in the absence of the treatment. The existence of this hidden danger, if found by the jury to exist, imposed a duty on the manufacturer to warn consumers. The question then is whether the manufacturer breached that duty, and whether such a breach proximately caused the plaintiff's injury.
 
 
 28
 The plaintiff put on an expert witness (a "human factors psychologist")[1] who testified that the warning on the label was inadequate. The witness testified that the warning failed to draw attention because it was printed in the same color and print as the rest of the label. He also stated that the warning failed to motivate the user to avoid harm because it did not explain what might happen if the warning was not heeded. I am not particularly impressed by the latter argument, because I think "keep away from open flame" clearly conveys the message that there is a risk of fire, and a risk of associated harms like burning persons or property. However, the criticism about the warning's prominence is relevant to the issue of adequate warning and raises a jury question of reasonableness.
 
 
 29
 As for proximate cause, the evidence is again thin but adequate to raise a jury question. To maintain an action for negligent failure to warn, the plaintiff must prove that the failure to warn was a proximate cause of the plaintiff's injury. See Singleton v. International Harvester Co., 685 F.2d 112, 116-17 (4th Cir.1981). The record below contains testimony that the plaintiff did not read the warning on the label. It also, however, contains testimony that she was "familiar" with the warning but interpreted it only as an admonition to avoid an oven or open flame, not as a warning to refrain from lighting a cigarette.
 
 
 30
 In sum, the factual questions raised by the conflicting testimony and the expert's statements that the label failed to draw attention and motivate the user were properly committed to the jury in order to resolve Greene's claim of negligent failure to warn; I therefore agree that the judgment must be affirmed, despite the instinctive reaction that "keep away from open flame" should adequately warn of the implicit dangers of bringing the product into proximity with a match or a cigarette.
 
 
 
 [1]
 Because the defendant manufacturer did not challenge the expertise of the plaintiff's witness, we have no occasion to consider whether the testimony was properly admitted under Fed.R.Evid. 702