888 F.2d 1385
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Wanda C. DAVIS, Plaintiff-Appellant,
v.
REYNOLDS PONTIAC, INC., Roy M. Reynolds, Kevin Reynolds,
Thomas Reynolds, Defendants-Appellees.
 No. 88-1337.
 United States Court of Appeals, Fourth Circuit.
 Argued June 8, 1989.
Decided Oct. 23, 1989.
Rehearing and Rehearing In Banc Denied Nov. 21, 1989.
 
 J. Lloyd Snook, III for appellant.
 Kevin Lee Locklin, Slenker, Brandt, Jennings & Johnson, on brief, for appellees.
 Before DONALD RUSSELL and SPROUSE, Circuit Judges, and VOORHEES, United States District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 This is a Title VII action with a pendent emotional distress claim. The plaintiff filed her Title VII claim with the Equal Employment Opportunities Commission (EEOC) stating a number of alleged sexual harassment incidents, only one of which was found by the EEOC to be timely filed. The respondents were the defendants Reynolds Pontiac, Inc., Roy M. Reynolds, Kevin Reynolds, and Thomas Reynolds. The charge of the plaintiff was that, while an employee of the defendant Reynolds Pontiac, she had been so sexually harassed by the defendant Roy Reynolds, an official of the defendant Reynolds Pontiac, as to create an "intolerable working environment causing her to resign." The EEOC investigated the charge, concluding that there was "not reasonable cause to believe the Charging Party's allegations." It, however, offered the plaintiff an opportunity for rehearing and advised her that, in the event she chose not to seek a rehearing, she could "only pursue this matter further by filing suit against the respondent(s) named in the charge in federal district court within 90 days of the effective date of dismissal." The plaintiff elected to file this suit, naming as defendants Reynolds Pontiac, Inc. and the three Reynolds. She joined with her Title VII action claims under Virginia common law for intentional infliction of emotional distress, invasion of privacy, and tortious invasion of an employment relationship. The defendants answered the complaint, denying the charges made. The cause came on for trial. At the conclusion of the plaintiff's testimony, the defendants moved for a directed verdict on all claims. The district judge granted the motion. The plaintiff appealed the judgment entered by the court. We affirm.
 
 
 2
 The defendant Roy Reynolds was a lonely bachelor, some sixty-odd years of age, who had lived with his mother until her death about 1983. While he had a stock interest in the automobile dealership, which is a defendant herein, he seems not to have had any significant participation in the management of the company. According to the plaintiff, his nephews, who with their father ran the company, largely disregarded him. Roy's responsibilities at the automobile agency were described by the plaintiff as relating to "the filling station part of the company, pumping stuff like that." The plaintiff herself was employed as "title clerk, insurance clerk, payroll clerk." Although plaintiff attempted to give the impression that Roy Reynolds was her supervisor, her testimony shows clearly that he was not. She testified that if she had to have direction, she looked to the other Reynolds. When asked specifically whether she had "to account for your activities at Reynolds Pontiac as an employee to Roy Reynolds," she responded, "No, I don't think so." Roy and the plaintiff actually worked in separate buildings with very different responsibilities and duties.
 
 
 3
 Roy, who had apparently lived a sheltered life without ever having had any romantic attachments, apparently had not noticed the defendant until she expressed her sympathy after his mother's death. That experience seems to have awakened his romantic interest in the plaintiff. After talking to the plaintiff, he purchased a lot next to the plaintiff's home and outfitted it as a playground for the plaintiff's two boys and those of his nephew who lived in the same area. From this time, Roy and the plaintiff saw more of each other in a social way. Roy began to give expensive gifts to the plaintiff. He bought her a $600 television set; he gave her diamond earrings; and he purchased for her corporate stock. The plaintiff suggests she discouraged the gifts and accepted them only at Roy's insistence, but the fact is that she accepted them and kept them until, many months later, she returned the earrings when Roy demanded their return after the plaintiff had accepted a ring from her new boyfriend Boyd Tankersley.
 
 
 4
 The plaintiff gave no testimony of any sexual harassment of her at the workplace by Roy. She did say he did on occasion come into the office where she worked with clippings. However, the clippings were inoffensive; they were, as the plaintiff identified them, "things he cut out from the paper, things about weather, sports, politics." Nor did he show the clippings just to the plaintiff; Roy showed them to the others in the office. Except for two occasions to which we refer later, Roy always treated the plaintiff with affection and sincere devotion. He was in love with the plaintiff and in a most honorable way. He wished to marry her. He never sought to touch her--he never addressed an obscene remark to her at work. The only occasions when he said anything that the plaintiff criticized were, first, when he heard the plaintiff had dated Boyd Tankersley, and, second, when later the plaintiff showed up at work displaying a diamond ring given her by Boyd Tankersley. Roy's outburst on the first occasion was innocuous and the normal reaction of a jealous suitor. At the second, Roy merely acted the part of a disappointed lover. There were no sexual suggestions and advances. He merely demanded the diamond earrings he had bought be returned and added he was going to take her children away from her because she was an unfit mother.[1] These do not measure up to a work environment where the plaintiff was subjected to sexual harassment by Roy.
 
 
 5
 The actual events of which the plaintiff complains occurred, not at the workplace, but basically in telephone conversations and contacts between Roy and her after work. She did charge that he made what the plaintiff could interpret as a somewhat oblique sexual reference in a telephone conversation one night. He very promptly apologized. On another occasion, the plaintiff said he induced her to rent and exhibit on her television at home a picture, The Best Little Whorehouse in Texas. She admitted there was nothing offensive in the picture. Beyond that, her son Scott gives an entirely different testimony than his mother on how and why this picture was rented and the circumstances of its showing. He testified:
 
 
 6
 It [i.e., the renting of the picture] was pretty much my idea. We (apparently referring to him and his mother) wanted him (referring to Roy) to come over and maybe watch a movie with us so that night--I even picked the movie out because I had seen it before, and I thought it was a real funny musical type movie.
 
 
 7
 The real complaint of the plaintiff, as we have said, was the allegedly repeated telephone calls of Roy. These seem to have taken on a distasteful character after the plaintiff's romance with Boyd Tankersley had blossomed. All of these calls, also, were at night, while neither Roy nor the plaintiff was working and they were calls that at first the plaintiff did not appear to discourage.
 
 
 8
 We have reviewed, as did the district judge, the record and, as we have indicated, we find no basis for any charge of sexual harassment creating intolerable working conditions which forced plaintiff to resign. The decision of the district judge to dismiss the plaintiff's Title VII suit was entirely proper.[2]
 
 
 9
 The district judge dismissed the plaintiff's pendent action for intentional infliction of emotional distress on the ground that Roy's conduct toward the plaintiff did not evidence an intent to inflict emotional distress but demonstrated an effort on the part of a love-sick suitor to press his suit upon his inamorata. We agree. The plaintiff, however, has cited two cases, neither from Virginia, which she posits sustain her position. Neither we find apposite. In Samms v. Eccles, 11 Utah 2d 289, 358 P.2d 344 (1961), the defendant's telephone calls invariably consisted of solicitations of illicit sex, culminating in one occasion when the defendant came to plaintiff's house and exposed himself indecently to the plaintiff. There is nothing remotely like that in this case. Slusher v. Oeder, 16 Ohio App.3d 432, 476 N.E.2d 714 (1984), was a suit by a husband to recover of the defendant for successfully seducing his wife. The action was sustained under the guise of one for intentional emotional distress but actually for alienation of affection, as is evident from the Court's opinion:
 
 
 10
 Despite the fact that the General Assembly has statutorily abolished the common-law torts of criminal conversation and alienation of affections, it appears that the Supreme Court has implicitly resurrected such causes of action, and that either may now be maintained in the form of an action for the intentional infliction of emotional distress, provided a plaintiff can sustain the necessary burden of proof in such a case.
 
 
 11
 This is not such a case.
 
 
 12
 We affirm the district court's dismissal of plaintiff's suit for intentional emotional distress. Since the plaintiff has not argued the other pendent causes of action asserted, we have no occasion to consider such claims.
 
 
 13
 We accordingly affirm the grant of a directed verdict on both the Title VII claim and the pendent claim and the entry of judgment herein in favor of the defendants.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 It seems that Boyd Tankersley had been spending nights with the plaintiff at her home and that she had gone on a cruise to Bermuda with Tankersley. This apparently was the basis for this statement of Roy to the plaintiff
 
 
 [2]
 The appellant has raised an evidentiary claim of error. One of these claims relates to the proposed testimony of the plaintiff's sister. The proposed testimony of the witness was that, when she met Roy Reynolds, he asked her if she were lonely and if she were married. We have some difficulty in finding any sexual innuendo in these two inquiries, but, in any event, the refusal of the district court to admit such testimony is not ground for reversal, absent abuse of discretion by the district judge, which we do not find here. Garraghty v. Jordan, 830 F.2d 1295, 1298 (4th Cir.1987); DeBenedetto v. Goodyear Tire & Rubber Co., 754 F.2d 512, 518 (4th Cir.1985); Reed v. Tiffin Motor Homes, Inc., 697 F.2d 1192, 1199 (4th Cir.1982)