50 F.3d 5
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jerry BABIN, individually and as Administrator of the Estate
of Tiffie M. Babin, Justin and Dustin Babin,
minors through Jerry Babin, their parent
and guardian, Plaintiff-Appellant,
v.
YALE MATERIALS HANDLING CORPORATION, d/b/a Yale-Eaton, d/b/a
Yale; Industrial Trucks, Incorporated; Yale Industrial
Trucks; Yale Industrial Trucks of Delaware Valley,
Incorporated, d/b/a Yale Industrial Trucks; Yale Industrial
Trucks-Delmarva, d/b/a Yale Industrial Trucks of Delaware
Valley, Incorporated; NACCO Industries; North American
Coal, Incorporated; North American Consultants,
Incorporated; Eaton Corporation, d/b/a Yale-Eaton, d/b/a
Yale, Defendants-Appellees,
and
HYSTER-YALE MATERIALS HANDLING, INCORPORATED, d/b/a
Yale-Eaton, d/b/a Yale, d/b/a Yale Materials
Handling Corporation, Defendant.
 No. 94-1537.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 31, 1995.
Decided Mar. 20, 1995.
 
 ARGUED: Peter Nicholas Munsing, Mayerson, Munsing, Corchin, Rosato & Ostroff, P.C., Wyomissing, PA, for appellant. Donald E. Sharpe, Piper & Marbury, Baltimore, MD, for appellees. ON BRIEF: Susannah M. Bennett, Piper & Marbury, Baltimore, MD, for appellees.
 Before HALL and WILKINSON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 In this case we must determine whether the district court properly granted judgment as a matter of law in favor of appellee Yale Materials Handling Corp. ("Yale") on appellant's claim of strict products liability. Because the district court correctly concluded that a motorized lift truck manufactured by Yale was not defective, we affirm.
 
 I.
 
 2
 On the evening of October 26, 1987, the decedent, Tiffie M. Babin, was operating a Yale MC25 counterbalanced motorized walk-behind lift truck in the raw materials warehouse of the Air Products and Chemicals, Inc. ("Air Products") production facility in Elkton, Maryland. Mrs. Babin, an Assistant Production Technician, was charged with using the motorized lift truck to move raw materials to the production line. Shortly after 9:00 p.m., George Schneese, a senior operator, walked through the warehouse area and noticed a lift truck backed up under some pallet racks and angled into the wall in an unusual position. Upon investigating, Schneese discovered Mrs. Babin pinned underneath the pallet rack against the wall by the "T"-handle of the lift truck. Dr. John Smialek, the Chief Medical Examiner for the State of Maryland, testified that the guard at the upper end of the handle caused compression fractures on the upper left portion of Mrs. Babin's chest, resulting in her death. There were no eyewitnesses to the accident.
 
 
 3
 Air Products purchased the lift truck involved in the accident from the predecessor of the defendant, Yale Materials Handling Corp., in 1973. The truck was designed for use in crowded warehouses and tight spots. Because of the risk that an operator could be caught between the truck and a wall, Yale offered as an optional feature a safety reversing device--essentially a switch mounted on the end of the T-shaped handle which would be depressed if the machine rolled into an operator's body and would automatically switch the direction of the machine away from the operator. When it purchased the lift truck, Air Products was given the option of selecting the mechanical reversing device but declined to order a lift truck equipped with the safety switch.
 
 
 4
 According to Yale, a reversing switch was not used as standard equipment on MC25 lift trucks because of a concern about "inadvertent actuation," which could cause a high load to topple off the forks. Yale also argued that its handle as designed would "ride up" or roll up an operator's body and thereby avoid injury.
 
 
 5
 The lift truck was controlled by a steering/braking handle that pivots from the base of the truck. When the handle was in the extreme upright position, the brakes were fully applied and the power off; an operator was required to move the handle down from the upright position to release the brake and turn the power on. In order to apply the brakes, the operator had to move the handle into the extreme upright or fully down position. The handle was, however, "spring balanced" for safety and efficiency; if at any time while the truck was in motion the operator were to release the handle, it would spring to the full upright position and stop the truck. At the time of its sale to Air Products, the Yale lift truck complied with all applicable OSHA regulations and the ANSI B56.1 Committee Standards.
 
 
 6
 Air Products is an international company with approximately 20,000 employees and an established safety department. For several years prior to this accident, Air Products owned and operated Yale and other motorized lift trucks, some of which were equipped with automatic reversing switches. The MC25 lift truck at issue in this case was used daily on three shifts without incident for the 14 years prior to Mrs. Babin's death.
 
 
 7
 Jerry Babin, husband of the deceased and executor of her estate, together with the estate of Tiffie Babin (collectively "Babin"), brought suit against Yale. The case was tried in January 1993 solely on the theory of strict liability in tort. Specifically, Babin alleged that the lift truck was defective and unreasonably dangerous when it was sold in 1973 because it was not equipped with an automatic reversing device as a standard rather than an optional feature. At trial, Babin presented evidence that a competitor had used a reversing "bellybutton" switch as standard equipment since 1966; appellant also referred to German industrial standards promulgated in 1973, which call for a reversing switch, telescoping handle, or other device to protect an operator from being crushed by a lift truck.
 
 
 8
 The trial court, Magistrate Judge Catherine C. Blake presiding by designation, submitted the case to the jury for decision on February 5, 1993. Following three days of deliberation, the jury reported that it could not reach a verdict. Judge Blake declared a mistrial on February 9, 1993. Yale renewed an earlier motion for judgment as a matter of law under Fed.R.Civ.P. 50(b), on the ground that there was not a legally sufficient evidentiary basis to support a verdict in Babin's favor. On April 6, 1994, the trial court granted Yale's motion, concluding that the lift truck was not defective and unreasonably dangerous at the time of its sale. Babin appeals.
 
 II.
 
 9
 To recover on a theory of strict liability under Maryland law, a plaintiff must establish that the product which caused her injury was defective at the time of sale and that the defect rendered the product unreasonably dangerous. See Phipps v. General Motors Corp., 363 A.2d 955, 959 (Md.1976); Restatement (Second) of Torts Sec. 402A (1965). Comment g to Sec. 402A defines a defect as a "condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." Singleton v. Manitowoc Co., Inc., 727 F.Supp. 217 (D. Md.1989), refined the definition of a defect:
 
 
 10
 A defect surely cannot be any condition that creates risk of harm. Rather it must be an imperfection; there must be a condition of the product by which it does not conform to 1) recognized standards in the design and manufacture of the product, 2) recognized standards imposed by society, or 3) the reasonable expectations of purchasers of the product at the time the product was sold.
 
 
 11
 Id. at 221 (emphasis in original). As the district court noted, the Yale lift truck displayed no such "imperfection": it conformed to societal standards and to the reasonable expectations of its purchaser, Air Products.
 
 
 12
 First, the truck clearly complied with "recognized standards in the design and manufacture of the product." Most significantly, the truck conformed with all applicable OSHA regulations and the ANSI B56.1 Committee Standards in effect in 1973. Babin's contention that the truck did not conform with certain performance guidelines issued by a West German industrial association in 1973 is unavailing: the German guidelines are not mandatory design standards but merely performance suggestions that allow for use of alternative methods for ensuring prompt braking of the truck. Yale's bottom-pivoting handle design accomplished the guidelines' objective.
 
 
 13
 Moreover, the lift truck undoubtedly complied with the "reasonable expectations" of its purchaser, Air Products. Air Products selected the MC25 lift truck that injured Tiffie Babin for use at its Elkton plant, presumably with the particular needs of the plant environment in mind. The reversing switch was available as an option on the lift truck, but Air Products chose to purchase a truck without this safety device. Air Products was experienced in the purchase and operation of lift trucks; since 1961, it had owned and operated several lift trucks, some of which were equipped with automatic reversing devices. As the purchaser/employer, Air Products was in the best position to evaluate the need for a reversing safety switch based on the environment in which the lift truck would be used. See also Austin v. Clark Equip. Co., 821 F.Supp. 1130, 1135 (W.D.Va.1993) (noting, in a negligence and breach of warranty action under Virginia law, that "when a customer exercises an option to purchase a product without a safety feature, the manufacturer should not be held liable for damages which that safety feature may have prevented").
 
 
 14
 Finally, it is noteworthy that the lift truck at issue in this case was used continuously at the Elkton plant for 14 years without any similar incident prior to the accident that resulted in Mrs. Babin's death. This lengthy period of uneventful operation certainly indicates that the lift truck conformed to the reasonable expectations of Air Products. Because the lift truck was not defective as defined by Maryland law at the time of its manufacture and sale, Babin cannot establish the requisite elements of a strict liability claim.
 
 
 15
 Babin's strict liability claim falls equally short under a risk/utility analysis, since he cannot establish that Yale acted unreasonably in putting the lift truck on the market without a standard reversing safety switch. See also Singleton v. International Harvester Co., 685 F.2d 112, 115 (4th Cir.1981) (under Maryland law, "[i]n a design defect case the issue is whether a manufacturer, knowing the risks inherent in his product, acted reasonably in putting it on the market"); Phipps, 363 A.2d at 961. Yale offered testimony from William W. Olsen, a mechanical engineer employed by Yale who was responsible for the design of motorized lift trucks during the relevant time period. According to Olsen, Yale weighed the marginal benefits of installing a reversing device as standard equipment against the potential adverse consequences and concluded that the benefits, which were limited in light of the existing bottom-pivoting handle design, did not sufficiently outweigh the dangers that would be created by the potential for inadvertent actuation of such a switch. Yale thus decided to offer the reversing device as an optional feature only.
 
 
 16
 Appellant did not offer legally sufficient evidence to establish that Yale's conduct was unreasonable. Melvin Richardson, Babin's expert, holds a Ph.D. in engineering mechanics. As the district court noted, however, "Dr. Richardson had no experience with the design or manufacture of lift trucks and very little experience with their operation." Moreover, although Richardson examined an "exemplar" lift truck similar to the truck operated by Mrs. Babin, "he never equipped that exemplar with an automatic reversing device to compare its performance to a lift truck without the device." Finally, Dr. Richardson admitted that there were serious adverse consequences associated with an automatic reversing switch, such as the potential for toppling of an elevated load.
 
 
 17
 Richardson nevertheless insisted that Yale's decision to market the lift truck was unreasonable. We cannot agree. Dr. Richardson's speculative testimony, largely unsupported by scientific testing, was insufficient to establish that Yale's decision to market the lift truck with an optional reversing device was unreasonable.*
 
 III.
 
 18
 For the foregoing reasons, the judgment of the district court is
 
 
 19
 AFFIRMED.
 
 
 
 *
 Appellant also makes various assignments of error relating to evidentiary issues that arose during the course of trial. Because we uphold judgment for Yale as a matter of law, we need not address these issues